*April* 14th.

## A. C. F. & G. REIGAL *against* WOOD AND OTHERS.

Equity grants relief, not only against deeds, writings, and solemn assurances, but against judgments and decrees, obtained by fraud and imposition. Where an attorney revived, by *scire facias*, an old outstanding judgment, on which but a very small sum, if any thing, was due, and knowing that the land on which the judgment remained a *lien*, was in the possession of innocent and *bona fide* purchasers; and afterwards made use of the judgment to compel the purchasers, who were ignorant of the proceedings under the *scire facias*, to pay and secure to him a debt he claimed against the person under whom they had purchased; this court, on the ground of imposition and undue advantage taken by the attorney, ordered him to refund the money he had so obtained, and set aside the securities he had taken, with costs.

THE bill, which was for an injunction, stated, that on the 23d of *January*, 1801, the plaintiffs purchased of *John Smith*, 200 acres of land in lot No. 54., in the township of *Manlius*, for 1,900 dollars. That the land was then subject to a mortgage by *Smith* to *Michael Myers*, for 800 dollars, which the plaintiffs paid to *Myers*, who agreed that the mortgage might remain for their use, and to secure their title. The plaintiffs took possession of the land, which they divided equally between them. That, in *June*, 1810, the plaintiffs were informed that *Thaddeus M. Wood*, defendant, had

caused the land to be sold, at the sheriff's sale, under a judgment in the name of *Daniel Avery*, (defendant,) against *John Smith* and *Aaron Wood*, obtained 13 or 14 years ago, in the *Onondaga* court of common pleas, on a promissory note for sixty dollars, for goods sold by *Avery*, as trustee, to one *Dickhout*, an absconding debtor. That the defendants, *T. M. Wood* and *George Hall*, purchased the land at the sheriff's sale. That the plaintiffs applied to *Wood* on the subject, who, at first, agreed to accept 40 dollars on the judgment, and release the purchase, but afterwards demanded payment of another judgment against *John Smith*, in favour of *Peter Smith*, for 300 dollars, which *Wood* alone, or in conjunction with two of the defendants, *Isaac* and *John Delamater*, had before purchased of *Peter Smith*. That the plaintiffs, through ignorance, yielded to the terms demanded, and gave *Wood* their bonds and mortgages on the premises, for 308 dollars, payable in a short time, with interest. The sum being divided into four equal parts, for which four bonds were given, and *Wood* and *Hall* released their claim to the land to each of the plaintiffs separately. That, afterwards, on investigation, the plaintiffs found that *John Smith*, after the judgment against him, in favour of *Avery*, had paid the amount of the judgment to *John Rappelye*, the creditor who had instituted the proceedings against *Dickhout*, and had paid, in boards, the costs to *Wood*. That *Wood*, in order to overreach the purchase of the land by the plaintiffs, had caused the judgment to be revived by *scire facias*, without the knowledge or consent of *Avery* or *Rappelye;* and that *John Smith*, being insolvent, aged, and having removed out of the county, did not attend to the suit. That the judgment of *Peter Smith* was assigned as above mentioned, with an express agreement that the land of the plaintiffs should not be affected by it, and made solely for the purpose of securing and protecting another piece of land claimed by *Wood* and the *Delamaters*. That on the revival of the judgment by the *scire facias*, *Wood* well knew of the purchase of the

*1815.*

REIGAL
v.
WOOD.

1815.

REIGAL
v.
WOOD.

land by the plaintiffs, and their settlement thereon: that the plaintiff, *Frederick Reigal*, has paid off his mortgage to *Wood;* but the other plaintiffs being unable to pay, *Wood* has advertised their lands for sale, under the mortgage, and also put their bonds in suit. And the plaintiffs prayed for an injunction to stay his proceedings, and for relief, &c.

The *answer* of *Thaddeus M. Wood* denied all knowledge of the mortgage to *Myers*, and of the plaintiffs being in possession at the time of the sheriff's sale under the judgment. This defendant also stated, that a judgment was obtained in *January*, 1789, against *John Smith* and *A. Wood*, on notes given to *Avery* and *James Bennett*, for 67 dollars and 90 cents damages, and 20 dollars and 81 cents costs. That, on the 25th of *February*, 1800, *Smith* paid 64 dollars on the judgment, and no more. That, in *November*, 1807, a *scire facias* was issued to revive the judgment, which was served personally on *Smith*, who appeared by attorney, and pleaded payment; and on a trial, in *September*, 1809, a verdict was found for the plaintiff for 88 dollars and 77 cents, on which a judgment was docketed the 17th of *November*, 1809, and the costs taxed at 29 dollars and 63 cents. That, in April, 1810, a *fi. fa.* was issued on the judgment, and, on the 2d of *June*, 1810, the lot No. 54., in *Manlius*, was sold at the sheriff's sale to the defendant, *Hall*, who bid for the defendant, *Wood*, for the sum of *two dollars*, and a deed was executed to *Hall* and *Wood*. That, on the 10th of *June*, 1810, some of the plaintiffs called on *Wood*, and informed him that they were in possession of the lot, and requested information, which he gave them, and referred them to the records. That they, afterwards, said that they were satisfied that the defendant, *Wood*, could hold the land under his purchase. That, at the request of the plaintiffs, he released the land to them, for the balance due on the judgment against *Smith* and *Wood*, the costs of the *sci. fa.*, and his charges for attending the sale and. drawing the bonds and mortgages, recording, &c., amounting to 108 dollars, including sheriff's fees, &c., with

the additional sum of 200 dollars, being part of a debt of 300 dollars which *John Smith* owed him, *Wood*, on his private account; and the plaintiffs gave him their bonds and mortgages for the above amount. That the defendant, *Wood*, did not pretend to hold the land by virtue of the judgment in favour of *Peter Smith*; that his offer to release was gratuitous, considering his title good under the purchase; and he told the plaintiffs, that he ought to be secured part of his own debt against *John Smith*, who had become insolvent. That he offered to give up the bonds and mortgages, if the plaintiffs would reconvey the land, and place him and *Hall* in the situation they were in before.

That if *John Smith* ever paid any thing in boards, it was on his private account, and not on the judgment.

*John Smith*, who was examined as a witness, 77 years of age, and had been blind for the last twelve years, said, that he had paid *Wood* 64 dollars on the judgment, for which he had a receipt, which he had lost, and, afterwards, paid him the balance, including costs, in boards. He said that the purchase of the plaintiffs, who took possession of the land, and their possession, was well known in the vicinity, and the witness told *Wood* of it before the sheriff's sale; that he had employed *Wood* as his attorney in various suits, and paid him all the costs due to him; that *Wood* never demanded payment of any thing until *September*, 1813; that the *sci. fa.* was personally served on the witness, who employed *Forman* and *Sabin*, attorneys, to defend the suit, but was never informed of the time of trial, nor did he know of it.

*George Hall* stated, that on the trial of the suit, on *scire facias*, in 1809, a verdict was taken for the whole amount claimed by *Wood;* and a stipulation in writing was given, than any receipts which might be produced, of payments on the judgment against *Smith* and *Wood*, should be endorsed on the execution to be issued on the judgment on the *scire facias*. It appeared, however, from the evidence of

1815.
REIGAL
v.
WOOD.

the deputy sheriff, that *Wood* endorsed on the execution delivered to the sheriff, directions to levy the whole amount, without any deduction.

*Hall* further stated, that he attended the sale, and was resolved to bid up so as to save the debt due him and *Wood ;* that *Wood* mentioned, at the sale, that *Smith* had conveyed the land to some persons, but he did not know who they were. He remembered that *Smith* paid *Wood* some account in boards; that *Wood* told the plaintiffs he could hold the land on the purchase at the sheriff's sale, but he only wanted to make himself whole against *John Smith*.

*Sabin,* who was attorney for *Smith,* stated, that *Smith,* in 1808, being poor and blind, removed to *Herkimer ;* that he wrote to him concerning the *scire facias*, and *Smith* answered that the judgment had been paid ; that he was old and poor, and it would not avail him to attend to it.

*Gold,* for the plaintiffs.

*Kirkland,* for the defendants.

THE CHANCELLOR. It appears to me, from a view of all the facts and circumstances attending this case, that I am bound to consider the judgment upon the *scire facias* as unduly obtained, and that the defendant cannot, in justice and good conscience, be permitted to hold any advantage which he may have obtained under it. It is a well-settled principle, in this court, that relief is to be obtained not only against writings, deeds, and the most solemn assurances, but against judgments and decrees, if obtained by fraud and imposition. (*Barnesly* v. *Powel,* 1 *Ves.* 120. 284. 289.)

*Wood,* the principal defendant, admits, in his answer, that when he undertook to revive the judgment of *Avery & Bennet* v. *Smith & Wood,* there was but 3 dollars 96 cents of the debt due. His object, certainly, was not that small balance ; and it does not even appear that, as to that sum, he had any

direction to issue the *scire facias,* from the persons in whose names it was issued, or to whom the money was due. It is evident his object was to secure another and larger demand against *Smith,* totally unconnected with the judgment, and that, as *Smith* was insolvent, as well as old, blind, and help-less, he sought to secure this demand by a contrivance cal-culated to defeat the title of the unsuspecting purchasers holding lands under *Smith.* It is in proof, that he knew that *Smith* had conveyed his interest in lot 54., in *Manlius,* to third persons; and the inference is irresistible, from his frequent intercourse with that town, that he knew that the land was in the actual occupation of the purchasers, and had received large and valuable improvements. No notice, however, is given to them, as ter-tenants, of the *scire facias.* We have reason to presume it was intentionally avoided, and he is content with a service of the writ on that very old and blind pauper, who had neither interest nor disposition to take care of the suit, and who, about that time, had gone, or removed, to a distant county. A verdict is, accordingly, obtained upon the *scire facias,* without any opposition from *Smith's* uninstructed counsel, for the whole amount of the original judgment, though he knew, at the time, that it had long before been nearly, if not entirely discharged. He is-sues his execution, and directs the whole of the judgment to be levied; and the sheriff, under his direction, sells, not upon the premises, but in another town, all the lands of the present plaintiffs, and which had cost them, eight years be-fore, near 2,000 dollars. This sale, as well as the previous proceedings, was unknown to the plaintiffs, and the lands were bid off by a partner of *Wood,* for his use, at a nominal sum. This partner says, that he bid to save the debt of him and *Wood,* and which, as it appears, consisted chiefly of an antiquated account of costs and charges, as attorneys for *Smith.* Having thus acquired a title, *Wood* imposes terms upon the plaintiffs as the previous owners of the land. He insists upon the payment of the principal part of his

demand against *Smith*, and compels them to redeem their land by giving him bonds and mortgages to the amount of 308 dollars. *Smith* denies that any part of that demand is due; and whether it be so or not, the settlement cannot be binding upon the plaintiffs; for the same imposition which attended the judgment, also infected this settlement, as it was made by them, totally uninformed of their rights, and in ignorance of the fraud by which the judgment was procured.

I think the weight of evidence is, that the whole of the original judgment, costs as well as debt, had long before been satisfied. *Smith* testifies that he had paid not only the small balance of the debt, but the costs, in boards; and another witness (*Hall*) says, that *Wood* had the benefit of some boards upon some claim which *Wood* had against *Smith*; and in the account exhibited by *Wood*, in this cause, he gives no credit, and makes no mention of the boards.

I am of opinion, therefore, that *Wood* cannot be permitted to acquire and hold any advantage whatever under the judgment obtained upon the *scire facias*, and that the whole proceeding was an imposition upon the plaintiffs. I shall, accordingly, decree, that the bonds and mortgages mentioned in the pleadings be given up and cancelled, and that the money which has been paid upon one of the bonds and mortgages be refunded, with interest; and that the defendant, *Wood*, pay the costs of this suit; and that the bill, as to the other defendants, be dismissed without costs.

Decree accordingly.