The Chicago Building Society *et al.*

*v.*

Elizabeth Haas *et al.*

*Filed at Ottawa September 27, 1884.*

1. Attorney and client—*betrayal of his client's interests by the attorney—remedy.* An attorney at law, when acting in good faith and his client makes no objection to his management of the cause, has the power to waive or withdraw a defence and consent to judgment, but not to fraudulently sell out his client's interests to the opposite party; and the courts will protect suitors from the treachery of their solicitors, as far as possible.

2. Same—*impeaching decree for fraudulent collusion between one's attorney and the adverse party.* A litigant's solicitor, for money received from the adverse party, entered into a stipulation for the entry of a decree against his client for a much larger sum than was due, without the knowledge or consent of the client, and withdrew a meritorious defence, and allowed a decree to be entered according to the corrupt agreement. The other party had notice of the solicitor's want of authority and of his want of fidelity, before taking the decree: *Held,* that the decree should be set aside for fraud in procuring the same.

3. Limitation—*bill of review.* A party has the same time in which to file a bill of review to set aside a decree as he has to prosecute a writ of error, unless there be special facts requiring more prompt action.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. Thomas A. Moran, Judge, presiding.

On July 11, 1874, Elizabeth Haas filed her original bill in the circuit court of Cook county, against the Chicago Building Society and one Luther L. Greenleaf, seeking to enjoin the sale of her two certain lots under two deeds of trust given by her and her husband to Greenleaf. The bill charged fraud and usury in the several loans and in the notes and deeds of trust. After stating two loans, (one for $6000, on eight per cent per annum interest, and the other for $4000, on like interest,) and the failure of the society to give her the full face of the loans, and the giving of notes for much larger sums than the sums pretended to have been in fact loaned, the bill alleged that on or about May 14, 1873, she made arrangements with the secretary and treasurer of the society for a further loan of $4000. She and her husband were required to execute new notes and trust deeds for the amount of all the loans, when she was informed that the society held to her credit $3745.89, from which she drew, in checks and cash, from May 15, 1873, up to July 3, 1873, $2048.07, and no more. The new papers consisted of two promissory notes, each dated May 14, 1873, payable to the order of the society, and for the sum of $12,381.60, making in all $24,763.20 for the three loans, and each in installments of $103.18, maturing monthly, for one hundred and nineteen months, with ten per cent per annum interest on each installment after due. These two notes were secured by two deeds of trust, given by Mrs. Haas and her husband on two of her lots in the city of Chicago. The bill further alleged that complainant, by May 14, 1873, paid back to the society $6198, and that from September 1, 1872, to the middle of July, 1873, she received from the society the total sum of $8748.70, and no more, of which she paid back $2070.40. The bill was filed to have an account taken of the sum she actually owed the society for the money actually advanced to her, with lawful interest, after allowing her credits for all payments, and for leave to redeem

the lots by the payment of such sum, and to enjoin a threatened sale by Greenleaf, the trustee.

On August 1, 1874, the defendants answered, denying all the material allegations of the bill, and on the 11th day of the same month the society filed its cross-bill, making Valentine Haas, the husband of Elizabeth Haas, a defendant, seeking a foreclosure of the two trust deeds. Mrs. Haas and her husband answered the cross-bill, and the cause was referred to the master to take proofs. On December 14, 1874, the circuit court entered a decree in the cases, dismissing the original bill, and finding under the cross-bill that there was due from Mrs. Haas and her husband the sum of $24,785.56 to the society under the notes and trust deeds, and directed payment by a short day, and ordered a sale of the lots if such payment was not made. From this decree Elizabeth Haas and Valentine Haas appealed to this court, which affirmed the same in all things except that part of it which provided for ten per cent interest after its entry. The decree of the circuit court was affirmed on the ground of the stipulation of D. J. Leary, the solicitor of Mrs. Haas and her husband, consenting to a decree for the amount it was rendered. Thereupon Elizabeth and Valentine Haas, on January 16, 1878, filed this their bill of review against the Chicago Building Society and Greenleaf, to impeach and set aside the decree upon the original and cross-bills, on the ground that it was obtained by fraud and collusion with their said solicitor, Leary. This bill, after setting out all the facts of the case and the previous proceedings, alleged the retainer by complainants of said Leary to prosecute the original bill and defend in the cross-bill, and that he, on or about the 24th day of November, 1874, while pretending to act as complainants' solicitor, without their knowledge, consent or authority entered into a corrupt agreement with the society and its officers that it might take a decree on its cross-bill for $24,785.56, in pursuance of which the decree sought to be impeached was

made, when in fact complainants did not at that time owe the society more than $7150, and that the excess above that sum was composed of illegal and usurious interest charged by the society against complainants; and that on October 17, 1876, the mortgaged lots were sold under such decree by the master in chancery, to the society, for $19,000. Beside the general prayer for relief, an account was asked to be taken of the sum actually due from complainants to said society, counting the interest at six per cent, which was offered to be paid when ascertained, and that on payment the deeds of trust and the decree and master's sale be cancelled and set aside.

On the hearing, the circuit court found, specially, the facts showing that the original decree was the result of a corrupt and fraudulent agreement of the complainants' solicitor with the building society that such a decree should be rendered, made without authority, and in violation of his duty as a solicitor, and that his stipulation to give away his clients' rights was a fraud upon them, and also finding that all the material allegations of the bill, as amended, and the supplemental bill to which the *oro tenus* demurrers were not sustained, were true, as stated. The decree then provided as follows:

"It is therefore decreed that the decree entered in this court December 14, 1874, in the cause wherein said Elizabeth Haas was complainant, and the cross-bills described, and the order modifying said decree, entered in this court September 18, 1876; the sale made to said society October 17, 1876, by° the master, of said lots 2 and 7, and the report of such sale, filed in this court October 21, 1876; the order confirming such report, November 23, 1876; the order of December 12, 1876, appointing a receiver, and the order of December 23, 1876, confirming such appointment, and the other orders and proceedings under and by virtue of said decree or consequent thereon, made either before or since the bill in this cause was filed, be and the same are hereby annulled, set aside and for naught esteemed; and it is ordered that such further pro-

ceedings be had in said cause wherein said decree was rendered upon said original bill filed by said Elizabeth Haas, and the cross-bill and the supplemental cross-bill filed by said building society, and upon the matters of supplement contained in the original and supplemental bills filed in this cause by said Elizabeth Haas and Valentine Haas, as to justice shall appertain. And thereupon it is ordered that the said stipulation, filed November 24, 1874, be and the same is hereby stricken from the files of the court, as given without authority, and a fraud upon the said Elizabeth Haas and Valentine Haas. And it appearing that the said society is in possession of the land described in said bills, and that until the matter of the state of the account between said society and said Elizabeth Haas is taken, the possession of said society of said lands and said premises should not be disturbed. It is therefore further ordered, that said reports of the master in chancery, George Willard, be and the same are hereby set aside and vacated, and that the taking of the account in the premises between the said building society and the said Elizabeth Haas, on just and equitable principles, from the commencement of their dealings down to the present time, should be referred to a master in chancery of this court. It is ordered that it be referred to Horatio L. Waite, one of the masters, to take and state said account; that in taking said account the master allow the said building society all sums of money loaned by it to said Elizabeth Haas, and all advances made by it to purchase incumbrances, with interest thereon at six per cent per annum, and for all other proper charges, and for taxes and for tax liens, tax deeds and insurance, and interest thereon; and that he charge it with all payments made by her to it, all rents, issues and profits of the real estate which it has received or by the use of ordinary diligence it might have received, making rests for rents in said account every six months, and following the rule adopted for calculating interest on partial payments."

From this decree the Chicago Building Society, the defendants, appealed to the Appellate Court for the First District, and that court having affirmed the decree, the defendants, by a further appeal, bring the case to this court, and assign various errors. The other material facts are stated in the opinion of the court.

Mr. WOLFORD N. LOW, Mr. EDWARD ROBY, and Messrs. MOORE & BROWNING, for the appellants.

Mr. W. T. BURGESS, for the appellees.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

This is a bill to impeach a decree between the same parties, for fraud in procuring the same. The grounds relied on to establish the fraud are, that Leary, the solicitor of the complainants in this case, for the sum of $356 paid him by the building society, sold out his clients, and entered into a stipulation that a decree should be entered against them for the sum of $24,785.56, (a sum much greater than they owed,) without their knowledge or consent, and that the society had notice, before taking its decree for the sum agreed upon by the solicitor, that he had no authority to make such stipulation. There can be no question as to the treachery of the solicitor to his clients, and it may be that he imposed upon the officers of the building society, and obtained money from them by false pretences or representations; but if they were ignorant, at the time, of the falsity of his representations, there was enough to cause them to suspect his fidelity to his clients. At any rate, before filing the stipulation and taking their decree they had knowledge of the solicitor's want of authority to make the stipulation.

Charles R. Brooke, secretary of the society, testifies that about October 23, 1874, Leary came to the office of the society and proposed a settlement of the litigation, stating

that Mrs. Haas had no further defence in the matter; that she had given him a quitclaim deed of the property, in order to assure him that he would be right in all he did, so that he acted not only in that capacity, but also as her attorney; that a large loan had been made some time previous, in anticipation of a settlement, and it was lying in bank at his credit, and that if the society would come to an agreement as to figures, he would bring a certified check; that on the next day Leary came again, and went over the figures, and agreed to them; that about two days later Leary called and said there was some interest or commission due upon the loan, and that he could not handle the money until that was paid; that this amount was $356, and neither he nor Mrs. Haas had the money just then to advance, and asked that the society advance this sum for a few days; that by the direction of some of the directors this sum was advanced to Leary, who gave his note therefor, and executed and delivered the following stipulation:

"The Chicago Building Society⎫
*v.*          ⎬
Elizabeth Haas and Valentine Haas. ⎭

"D. J. Leary, as attorney for the above named defendants, and for himself, hereby stipulates and agrees with the Chicago Building Society that he holds a good and sufficient authority from Elizabeth and Valentine Haas, the aforesaid defendants, to make the following stipulation and agreements: It is hereby stipulated and agreed by Elizabeth Haas and Valentine Haas, that a decree of the said court be entered as of record in favor of the Chicago Building Society, for the amount of $24,785.56, due October 15, 1874, as soon as such decree can be drawn. And it is hereby further stipulated and agreed, that the said Elizabeth Haas and Valentine Haas, or D. J. Leary, as their attorney, will pay or cause to be paid to the Chicago Building Society the sum of $30,000, on or before the 31st day of October, A. D. 1874, in which case the

said building society hereby stipulates and agrees to control and procure three other trust deeds, securing an aggregate sum of $5000, together with a certain judgment obtained against the said defendants by the Chicago Building Society, and as soon as said decree can be confirmed by the court, to give the said defendants, or said Leary, as their attorney, a full and entire release of all claims now held by said society against the property involved in this suit, and all other property owned or possessed by the said defendants.

D. JAMES LEARY,
*Solicitor for Haas.*"

This stipulation bears no date, but the proof shows it was executed and delivered October 27, 1874, though not filed until November 24, 1874. With this stipulation, if made rightfully and by authority of the parties, the further taking of evidence before the master was unnecessary. That, alone, would settle the rights of the parties. Notwithstanding this, we find that on October 29, 1874, two days after this stipulation was given, Brooke, the secretary, appeared before the master, and was sworn to his deposition. At the close of Brooke's deposition, the master entered a memorandum that the parties, "by their attorneys, announced that they did not desire to offer any further testimony." Mrs. Haas had not then been examined, and this stipulation was not filed with the master, who filed his report October 30, 1874. On the same day a second stipulation was filed, agreeing that the evidence and master's report then on file might be withdrawn, for the purpose of taking additional evidence before the master. It seems strange that the solicitor for the building society, with the first named stipulation in his hands controlling and settling the whole case, should consent to a re-reference of the case to take further evidence, if the stipulation was believed to have been given with the consent or authority of the adverse parties. The parties again went

before the master, and on November 6, 1874, Brooke was recalled, and cross-examined at great length by Leary. On the same day Mrs. Haas testified in her own behalf, and was cross-examined fully upon the question at issue by the pleadings, but her attention was not called to this stipulation. From the facts stated in Brooke's affidavit, made December 22, 1874, to procure the arrest of Leary, and his testimony in this cause, it is evident that the stipulation would never ·have been obtained unless Leary had got the $356.

It is said that the decree in the original case was not made upon this stipulation. There is no direct proof as to this, but the fact that the decree is for precisely the sum named in the stipulation on file at the time of the hearing, makes it evident that the court did not overlook the same. It was before the court, and the court decreed in accordance with it; and this court, when the cause was before us, (80 Ill. 248,) held that the decree entered was entered by consent.

There is no doubt but that the Haas had a meritorious defence to the cross-bill. It seems to be conceded that the notes and trust deeds contained usurious interest; but it is contended that it is competent for an attorney to waive such a defence for his client. This the attorney may do when his client makes no objection, and he acts in good faith; but no court can ever sanction the doctrine that an attorney has the power fraudulently ·to barter away any of his client's rights to the opposite party. On the contrary, it is the duty of the courts to protect suitors from the fraud and treachery of their attorneys or solicitors, so far as possible; and a party having knowledge of an attorney's. fraudulent purpose or want of authority, can not profit from his acts to the injury of his client. In this case we hold, with the circuit court, that the stipulation from Leary was the result of fraud and collusion between the appellees' solicitor and the officers of the appellant, and that the filing of the same in the cause without the knowledge or consent of appellees, was a fraud, not only upon

appellees, but also upon the circuit court and upon this court when the case was presented for consideration.

It is also objected that the appellees were barred of relief by *laches* in bringing their bill and bringing it to a hearing. A party has, by law, the same time in which to file a bill of review to set aside a decree as he has to prosecute a writ of error, unless there be special facts requiring more prompt action.

Perceiving no substantial error in the record, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*