## JOHN HANLEY AND MICHAEL HANLEY v. ELLEN HANLEY.

[No. 45,629; decided January 30, 1895.]

Homestead—Relief in Equity from Order Setting Apart.—Where a homestead is procured to be set apart by fraud, a court of equity has jurisdiction to grant relief against the order.

Homestead—Collateral Attack on Order Setting Apart.—An order in probate setting apart a homestead cannot be collaterally attacked unless the court acted without jurisdiction.

Joseph S. Tobin and Andrew G. Maguire, for demurrer.

Sullivan & Sullivan, for plaintiffs, contra.

COFFEY, J.   This is an action to vacate an order made and entered on the twenty-fourth day of February, 1894, setting apart the premises described in the complaint as a homestead to Ellen Hanley, the defendant.   As grounds for the relief sought, the complaint charges:

1. That the property was the separate property of the defendant's deceased husband, Patrick Hanley, and that the latter never selected or joined in the selection of the premises as a homestead.

2. That at the time the declaration was signed and recorded, neither defendant nor her said husband resided upon the premises.

3. That the building situated on the property was constructed for the purpose of constituting three family dwelling places, and did in fact, at the time the declaration was signed and filed, comprise three flats.

4. That defendant falsely and fraudulently represented to the appraisers appointed to appraise the estate of her deceased husband that the property was community property, and willfully, falsely and fraudulently represented to the court that said property was community property, and that the declaration was signed and recorded while she and her husband were actually residing upon said premises.

Counsel for the plaintiffs contend that while it is true that the homestead exemption was founded upon principles of the soundest policy and supplies "a beneficent provision for the protection and maintenance of the wife and children against the neglect and improvidence of the father and husband," it is clear that that self-same policy requires the existence of certain definite conditions before this privilege can be invoked. In the first place, in order to impress upon the premises the character of homestead, it is essential that the claimant actually reside thereon at the time the declaration is filed: Civ. Code, sec. 1237; Prescott v. Prescott, 45 Cal. 58; Gregg v. Bostwich, 33 Cal. 220, 91 Am. Dec. 637; Babcock v. Gibbs, 52 Cal. 630; Aucker v. McCoy, 56 Cal. 524; Dorn v. Howe, 52 Cal. 630.

Since, then, the claimant did not reside upon the premises at the time the declaration was filed, it is claimed that the

declaration is obviously ineffectual for any purpose; but even conceding that the defendant actually lived with her husband upon the premises at the time the declaration was filed, it is equally clear, it is argued by counsel for plaintiffs, that the declaration, if effectual for any purpose, would merely cover that portion of the building occupied by the parties, and would not embrace the flats intended for tenants: Tiernan v. His Creditors, 62 Cal. 286; Maloney v. Hefer, 75 Cal. 422; Mann v. Rogers, 35 Cal. 319.

In the next place, proceeds the argument, in order that the court may have power to set apart for the use of the surviving wife the homestead, selected, designated and recorded, it is necessary that it should have been selected from the common property, or from the separate property of the person selecting or joining in the selection of the same: Code Civ. Proc., sec. 1465.

If, however, the homestead was selected from the separate property of either the husband or wife, without his or her consent, it vests on the death of the person from whose property it was selected, in his or her heirs: Code Civ. Proc., secs. 1468, 1474; Gruwell v. Seybolt, 82 Cal. 9, 22 Pac. 938.

In other words, upon the death of Patrick Hanley, the property in controversy vested in the decedent's heirs, subject only to the right of the court to set aside the homestead to the surviving wife, for a limited period: Gruwell v. Seybolt, 82 Cal. 9, 22 Pac. 938.

If, however, the defendant by her false and fraudulent representations, deceived and imposed upon the court and its officers, and by means of such false and fraudulent representations procured from the court an order which it had no legal authority to make, equity will certainly extend its aid to the parties aggrieved, and relieve them from the effects of this decree, begotten of fraud and perjury.

Mr. Pomeroy, who is justly considered the leading authority on questions of equity jurisprudence, aptly says: "When a judgment or decree of any court, whether inferior or superior, has been obtained by fraud, the fraud is regarded as perpetrated upon the court as well as upon the injured party. The judgment is a mere nullity, and it may be attacked and

defeated on account of the fraud, in any collateral proceeding brought upon it or to enforce it, at least in the same court in which it was rendered'': Pomeroy's Equity Jurisprudence, sec. 919.

"A judgment or decree obtained by fraud, upon a court," says Kerr, "binds not such court, or any other, and its nullity upon this ground, though it has not been set aside or reversed, may be alleged in a collateral proceeding": Kerr on Fraud, Am. ed., 283.

This principle is elementary, and has received the sanction of our courts from an early date.

In Sandford v. Head, 5 Cal. 298, the courts say: "The bill filed alleges fraud and collusion between the administrator and the probate judge, who seeks to set aside the proceedings in the probate court for the benefit of the heirs, upon the ground of collusion and fraud between the judge presiding in the premises, and the administrator.

"Respondents demurred, upon the ground that the proceedings of the probate court could not be attacked or reviewed except upon appeal, and the demurrer was sustained.

"It is a familiar maxim of the law, that fraud vitiates everything. The district courts, by the constitution of this state, are clothed with original jurisdiction in law and equity where the amount in controversy exceeds $200, exclusive of interest. The district judge, while sitting in an equity cause, is possessed of all the powers of a court of chancery. The district court, being a court of general jurisdiction, can, in a case of equity, where fraud and collusion are charged against a judge, in entering an order or decree, review the same, and annul it, if the facts justify such a conclusion. Unless a court of general jurisdiction possessed such a power over limited and inferior tribunals, such as probate courts, the rights of heirs and orphans might be at any time endangered without a remedy. The doctrine seems to be admitted as unquestionable, that a court of chancery has jurisdiction to set aside decrees obtained by fraud on an original bill filed for that purpose. Such is the view taken in Wright v. Miller, 1 Sand. Ch. 120. It is also so held in Reigal v. Wood, 1 Johns. Ch. 402."

So, in Carpentier v. Hart, 5 Cal. 407, it is said that a party is not confined to his remedy by statute, but may resort to a court of equity for relief against a judgment obtained by fraud and surprise.

In Nealis v. Dicks, 72 Ind. 376, a similar rule is announced. In that case, Elliott, J., holds the following language: "The power and right of courts of equity to set aside judgments procured by fraud, have been exercised for many years. Once, indeed, the right was doubted, but it has long been unquestioned. This power has been often exercised by the courts of this state. That our courts possess ample equity powers is a proposition so plainly correct that its bare statement excludes debate. Nor does the statute concerning the review of judgments restrict the power of the courts to set aside judgments to the two grounds there specified. Courts must, and do, possess other powers than those expressly conferred by statute. The code does not profess to strip the courts of the powers incident to courts of equity. The framers of the code did not intend to take from our courts rights and authority long asserted and exercised. Courts of equity possess powers far more important, and infinitely more essential to the complete administration of justice, than any ever created or conferred by legislative enactment. The powers of courts of equity were created and defined by men of wisdom, whose object was to form a body of primary rights and equitable remedies that would enable the courts to enforce the principles of natural justice. It will not do to hold that courts possess no power to annul judgments except upon the grounds and in the mode expressly specified and prescribed by statute. If courts were restricted to the mere exercise of statutory powers, they would make but a lame and halting progress in the administration of justice. The statute concerning the review of judgments does not mean that judgments shall only be vacated upon the grounds therein designated, or only in the mode there prescribed, to the exclusion of all other causes and all other modes. Neither the latter nor the spirit of the act warrants the conclusion that the legislature intended to so narrow the power of courts of general jurisdiction to relieve against judgments, as to limit and confine them to the causes

and modes expressly prescribed by statute. Where the statute does prescribe the causes for which a judgment may be set aside, and does provide a mode of procedure, then, of course, the statute controls, and is to be followed and obeyed.''

So, in Bibend v. Kreutz, 20 Cal. 114, the court, per Cope, J., thus announces the rule: ''Objection is taken to the mode in which plaintiff seeks redress, but we are of opinion that the remedy in equity was properly resorted to. The statutory remedy by motion, except in cases where there has been no service of summons, is only available during the term at which the judgment is rendered, and in many cases a denial of the most obvious justice would result from holding this remedy exclusive. The assistance of equity cannot be invoked so long as the remedy by motion exists, but when the time within which a motion may be made has expired, and no laches or want of diligence is imputable to the party asking relief, there is nothing in reason or propriety preventing the interference of equity. 'In general,' says Story, 'it may be stated that in all cases where by accident or mistake, or fraud, or otherwise, a party has an unfair advantage in proceedings in a court of law, which must necessarily make that court an instrument of injustice, and it is therefore against conscience that he should use that advantage, a court of equity will interfere and restrain him from using the advantage which he has thus improperly gained': Story's Equity, sec. 885. In the present case, there is no doubt that an unconscientious advantage has been obtained of the plaintiff, and the findings of the court expressly negative any inference of a want of diligence on his part. Under these circumstances, and in view of the positive injustice which must result from a refusal to interfere, we do not see upon what principle relief can be denied.''

In the case of Dean v. Superior Court, 63 Cal. 474, a decree allowing the final accounts of the executor and distributing the estate was made.

A petition to set aside the order was filed in the superior court, as the successor of the probate court, several years after the same was entered, and long after the period had elapsed within which an appeal could be taken. The relief sought in the complaint was based upon allegations of false

representations and of fraudulent pretenses on the part of the executor, by which the court was induced to approve the account and decree distribution. The court in passing upon the validity of this petition say: "If the judgment or order was obtained by the employment of frauds or artifices such as would justify a court of equity in annulling it (upon which it is unnecessary to express an opinion), the remedy of the party aggrieved was by independent action in equity, and the issuing and service of summons thereon": See, also, Estate of Hudson, 63 Cal. 456; Hayden v. Hayden, 46 Cal. 332; Wene v. Robinson, 9 Cal. 112; Chester v. Miller, 13 Cal. 559; Lapham v. Campbell, 62 Cal. 196; Dunlap v. Cody, 31 Iowa, 260; Duninger v. Moschino, 93 Iowa, 495; Chicago Bldg. Assn. v. Haas, 111 Ill. 176; Murphy v. Smith, 86 Mo. 333.

In Baker v. O'Riordan, 65 Cal. 368, 4 Pac. 232, which was an action in equity, to set aside a decree of the probate court procured by "false and fraudulent acts and proceedings," it was insisted on behalf of defendant that plaintiff's only remedy was to move in the probate court, under section 473 of the Code of Civil Procedure for any relief to which he might be entitled. But the supreme court said "that the intention of the legislature was not to curtail, but to extend, the grounds of relief; not to limit the time within which a *void judgment* might be attacked and set aside to six months, but to give a party six months within which to move to have a valid judgment set aside on grounds other than those which affected its validity": See, also, California Beet Sugar Co. v. Porter, 68 Cal. 372, 9 Pac. 313.

In Tobelman v. Hildebrandt, 72 Cal. 316, 14 Pac. 20, the court while expressly announcing the rule, that an order of a probate court is a final adjudication of the matter of which it assumes to dispose, and cannot, therefore, be collaterally attacked, adds that such a decree, however, "may be attacked for fraud or mistake, like other judgments": See, also, Lataillade v. Orena, 91 Cal. 576, 25 Am. St. Rep. 219, 27 Pac. 925; Dunlap v. Steere, 92 Cal. 344, 27 Am. St. Rep. 143, 28 Pac. 563, 16 L. R. A. 361; Bergin v. Haight, 99 Cal. 52, 53 Pac. 760.

The foregoing is the case presented by the plaintiffs in support of their complaint, to which the defendant interposed a demurrer.

The complaint shows that the decree awarding the property as a homestead to the widow was duly made by the probate branch of this court after due proceedings had, and that this action was commenced after the time allowed by law for appeal by the heirs from said order of the probate court awarding and setting apart the homestead to the widow had elapsed.

The demurrer of defendant is general and special.

Defendant submits that the complaint does not state facts sufficient to constitute a cause of action, and that a collateral attack of this character and after the time for appeal from the order has elapsed is not maintainable.

This proposition is so evident and so well established by decisions as to make it almost unnecessary to cite authorities in support thereof: Estate of Burns, Myr. Pro. Rep. 155; Gruwell v. Seybolt, 82 Cal. 10, 22 Pac. 938; Estate of Moore, 96 Cal. 523, 31 Pac. 584; Estate of Burns, 54 Cal. 223; Kearney v. Kearney, 72 Cal. 592, 15 Pac. 769; Phelan v. Smith, 100 Cal. 170, 34 Pac. 667; Cal. Code Civ. Proc., secs. 963, 969, 1714, 1715, 1908; In re Maxwell, 74 Cal. 384, 16 Pac. 206.

In the Estate of Burns, Myr. Pro. Rep. 155, the widow Lizzie Burns (she being also administratrix) filed her petition January 19, 1877, asking that a parcel of land valued in the inventory and appraisement at $3500 be set apart to her as a homestead, alleging that decedent in his lifetime (he died December 8, 1876) had not selected and recorded any homestead.

On the 26th of January, 1877, the court made a decree finding that notice of the hearing of the petition had been given, that the family of the deceased consisted only of the widow, that she had no separate estate of her own and that the parcel of land in question did not exceed $4,000 in value, and set the same apart to the use of the widow, the same not to be subject to further administration. The parcel consisted of all of decedent's estate.

On July 14, 1877, Ann Gordon, sister of decedent, and one of the heirs to his estate, nonresident, filed a petition setting

forth that the property set apart to the widow was his separate estate and that the lot had never been improved or used as a residence by decedent, who resided in another part of the city; that all the heirs of the decedent save the widow were nonresidents, and by reason thereof had no notice of the application; that no attorney was appointed to represent them at the hearing; that the widow was not the head of a family, and therefore was not entitled to a $5,000 homestead, and further alleging that the court could not have known at the hearing the true status of the property. Petitioner asked, therefore, that the decree allotting the homestead should be vacated. The widow demurred to the petition on the ground that after making the order the court lost jurisdiction and that no appeal had been taken. That the motion to vacate had not been made within the time prescribed. That the homestead having been once set aside it is not subject to further administration.

The demurrer was sustained, for that the petition of Ann Gordon to vacate the homestead decree did not state facts to entitle the petitioner to the relief prayed for.

On the 17th of January, 1873, the nonresident heirs filed a petition setting forth the facts of administration, the settlement of an account, the distribution of personalty, and asking that the homestead as separate estate of the decedent be included in the accounts of administration and be made subject to distribution, the same not being proper subject of a homestead decree; also that the widow render further account of personalty.

The court declined to compel the administratrix to file any additional account as to personalty (unless the heirs could show further receipts by the administratrix), or to disturb the homestead proceeding and on motion for a new trial the same was denied.

Gruwell v. Seybolt, 82 Cal. 10, 22 Pac. 938, judgment was entered in favor of defendants on demurrer to the complaint; plaintiffs appealed therefrom. Complaint alleges that plaintiffs are the heirs at law of Robert Gruwell, who died intestate on July 17, 1881, leaving surviving him besides these plaintiffs a widow, Eliza V. Gruwell; that after the death of Robert

his widow, Eliza V., in a petition praying for letters of administration, falsely alleged that the land in controversy was community property and that the appraisers falsely returned it in their inventory as community property; that in 1871 said Eliza V. made and filed a declaration of homestead on the premises; that upon a petition falsely alleging that the property was community property, the superior court by its order set aside the premises for a homestead absolutely as her sole and separate estate; on June 12, 1882, said Eliza V. conveyed all her right, title and interest in and to the property to one Barnes, who after conveyed to the defendant Seybolt and wife; that on June 6, 1883, Seybolt and wife mortgaged to defendant Shafter, and that defendant Summers claims to be the owner of said mortgage by assignment; that plaintiffs are the owners in fee simple to the property and entitled to the possession thereof.

The prayer is that the defendants may be required to set forth the nature of their claims to the property; that the decree setting apart the homestead be vacated; for a judgment that defendants have no right, title or interest in the property, and that plaintiffs are entitled to the possession of the premises and to costs of suit.

The court says: "The only question remaining is whether, conceding the facts alleged to be true, appellants have lost their right to have the decree set aside by failure to appeal therefrom. We think they have. The order setting apart the homestead is appealable: Code Civ. Proc., sec. 963, subd. 3; Estate of Burns, 54 Cal. 223. The heirs had notice of the application for a homestead, the estate had been fully administered, and the complaint fails to show that any fraud or device was resorted to by defendants whereby plaintiffs . . . . have been prevented from making proof in reference to the character of the property from which the homestead was selected: Kearney v. Kearney, 72 Cal. 591, 15 Pac. 769. Judgment affirmed."

Estate of Moore, 96 Cal. 523, 31 Pac. 584, held, where it appears upon final distribution of the estate of a deceased person that a homestead in fee out of the separate property of the deceased had by a previous order of the court been pre-

viously set apart to the widow and children of the intestate, and that the time for appeal from such order had elapsed without any appeal taken therefrom, the order is not void, but must be considered as in full force, however erroneous; and it is error for the court to distribute to the heirs, as part of the estate, the land so set apart. By force of the decree setting it apart, the title to the homestead is, as against the heirs of the deceased, in the parties named in that decree.

The remedy of plaintiffs is not an action of this kind; they should have appealed within the time allowed by law from the order setting apart the homestead; failing to do this, a collateral attack upon the probate decree such as this action is cannot be maintained.

As to this point and the question of appeal, see Estate of Burns, 54 Cal. 223; Code Civ. Proc., secs. 963, 969, 1714, 1715.

The plaintiffs in this action are bound by the judgment of the probate court. Section 1908, Code of Civil Procedure, provides: ''The effect of a judgment or final order in an action or special proceeding before a court or judge of this state or of the United States having jurisdiction to pronounce the judgment or order is as follows:

''1. In case of a judgment or order against a specific thing or in respect to the probate of a will or the administration of the estate of a decedent or in respect to the personal, political or legal condition or relation of a particular person, the judgment or order is conclusive upon the title to the thing, the will or the administration or the condition or relation of the person.

''2. In other cases the judgment or order is in respect to the matter directly adjudged conclusive between the parties and their successors in interest by title subsequent to the commencement of the action or special proceeding litigating the same thing under the same title and in the same capacity provided they have notice, actual or constructive, of the pendency of the action or proceeding'': Phelan v. Smith, 100 Cal. 170, 34 Pac. 667.

Searls, Commissioner, after referring to objections raised in an action to set aside decree awarding homestead, states that in a collateral attack upon proceedings of this kind only such

errors can be shown as render the decree absolutely void and not merely voidable: Kearney v. Kearney, 72 Cal. 592, 15 Pac. 769.

Appellants contended in this last cited action that the decree setting apart the homestead to the widow was void for want of jurisdiction in the court to hear and determine the same without notice. Probate proceedings and the judgment rendered therein are in the nature of proceedings in rem. In other words, such judgments are founded in proceedings not against persons as such, but against or upon the thing or subject matter itself, whose status or condition is to be determined and the judgment when rendered is a solemn declaration of the status of the thing, and ipso facto renders it what it declares it to be; citing Woodruff v. Taylor, 20 Vt. 65.

The court, after discussing the question of notice and after showing that personal notice is not required, says: "The record shows that the court in this case acquired jurisdiction of the subject matter of the estate in the usual manner, and having such jurisdiction and authority to set apart a homestead, and the statute not requiring notice thereof to be given, we are of opinion that the decree of the court in that behalf was not void for want of notice to the heirs." The judgment was affirmed.

Since the submission of defendant's brief on demurrer to the complaint of plaintiff herein another decision has been rendered by the supreme court of the state of California, which sustains the position maintained by defendant deciding that a complaint such as is filed by plaintiffs herein is not maintainable, and that demurrer to the same should be sustained: Fealey v. Fealey, 104 Cal. 354, 43 Am. St. Rep. 111, 38 Pac. 49.

In accordance with the foregoing authorities this court is of opinion that it has now no jurisdiction of the matters set forth in said complaint; that the plaintiffs, having failed to appeal, cannot maintain this suit; that a collateral proceeding of this character is not maintainable; that the time for appeal from the decree awarding and setting apart the homestead to

this defendant has elapsed; that the said complaint does not state facts sufficient to constitute a cause of action or entitle the plaintiffs to any relief whatsoever.

Demurrer sustained.

----

The Order of a Court Having Jurisdiction setting apart a probate homestead is in the nature of an adjudication in rem, and, though erroneous, is conclusive upon all persons interested in the estate unless an appeal therefrom is seasonably taken. On collateral attack, only such errors are available as render the decree void as distinguished from voidable merely. Before making the order, it is necessary for the court to determine that the facts exist which authorize it so to do, and this determination cannot be inquired into collaterally. The superior court has jurisdiction, on motion of the executor and heirs, to vacate or modify an order setting apart a probate homestead, on the ground of inadvertence, surprise or excusable neglect, or to entertain a bill by a creditor to set aside the order on the ground of fraud. It has been affirmed however, that a judgment of a court of competent jurisdiction can be vacated in an independent equitable proceeding for fraud, only when the fraud alleged was extrinsic or collateral to the matter which was tried and determined by the court: 1 Ross on Probate Law and Practice, 480.

A complaint in an action to annul an order setting apart a homestead to the widow of a deceased person out of his estate, which alleged that the property set apart was the separate property of the deceased, and that the widow, the defendant in the action, knowing that fact, and for the purpose of deceiving the court, falsely alleged and falsely swore that the property was community property, whereby the court was misled and deceived, and induced to make the order, does not state facts sufficient to constitute a cause of action: Fealey v. Fealey, 104 Cal. 354, 43 Am. St. Rep. 111, 37 Pac. 49.