[No. 14966.  In Bank. — November 30, 1892.]

# IN THE MATTER OF THE ESTATE OF WILLIAM H. MOORE.

ESTATES OF DECEASED PERSONS — ADMINISTRATOR'S ACCOUNT — PAYMENT FOR BENEFIT OF TENANT OF ESTATE. — An administrator, in the settlement of his account with the estate, is not entitled to be credited with the amount of a payment advanced to his own tenant for the benefit of a tenant of the estate, under an agreement with the latter for the pasturing of cows upon the farm of the administrator, it being agreed that the tenant of the estate should pay one half of the price thereof to the administrator and one half to the administrator's tenant.

ID. — LOSS OF RENTS — LIABILITY OF ADMINISTRATOR — NEGLIGENCE — GOOD FAITH. — An administrator cannot be charged with loss resulting from his failure to collect rents, nor for his failure to rent land for the highest procurable rent, where it does not appear that such failure was due to his neglect to use ordinary care and diligence in the management of the estate, or that he did not act in good faith and for what he deemed the best interest of the estate.

ID. — MEASURE OF ADMINISTRATOR'S DUTY. — The only measure of an administrator's duty is to act with fidelity, and with that degree of prudence and diligence which a man of ordinary judgment would be expected to bestow upon his own affairs of a like nature.

ID. — FAILURE TO COLLECT INTEREST OF NOTE — OMISSION TO FIND NEGLIGENCE. — Where the court finds that the administrator collected the principal of a note due the estate, but failed to collect the interest thereon, because he "did not push the collection thereof" until after the maker of the note became insolvent, but fails to find that the balance due upon the note was lost by the negligence of the administrator, it is error for the court to charge the administrator with such balance.

ID. — INCORRECT CHARGE OF SUM RECEIVED — APPEAL — FAILURE TO EXCEPT — CORRECTION OF ERROR IN ACCOUNT. — Where it appears from the evidence in the record, upon appeal from an order settling the account of an administrator, that he has received a specific sum of money, and that he is only charged with a portion of the sum received, the fact that no specific exception was taken to such item, and that the attention of the trial court was not called to the evidence showing that he had not charged himself with the full amount which he received, is not a waiver of the right of those entitled to succeed to the estate to have the error in the account corrected, if it should appear to be such in the course of the further proceedings to be had in the settlement of his account.

ID. — EXCESS OF COMMISSIONS. — The allowance to an administrator, as commissions, of a sum in excess of the statutory percentage to which he is entitled is errroneous, in so far as it exceeds the percentage fixed by statute, where the administrator has not petitioned the court for an extra allowance for extraordinary services, and it does not appear that he rendered any such services.

ID. — ADVANCE OF MONEY TO WIDOW — REPUDIATION OF AGREEMENT — CHARGE AGAINST DISTRIBUTIVE SHARE. — Where the administrator paid a sum of money to the widow of the intestate, under an agreement that

she should accept it as her share of the estate, which sum she accepted and retained, the administrator is entitled to a decree that the sum advanced is a charge against her entire distributive share of the estate, whether the same consists of money or of real estate, or both, if her share of money is not sufficient to pay the advance, although the agreement upon which she received the money so advanced was not such as to be legally binding upon her, and she subsequently successfully repudiated it.

ID. — ALLOWANCE OF INTEREST UPON SUM ADVANCED — CHARGE AGAINST WIDOW. — In such case it is proper to charge the administrator with interest upon the sum advanced by him to the widow, and he is entitled to charge the amount of such interest against the portion of the estate to be distributed to her.

ID. — PROBATE JURISDICTION — SETTLEMENT OF ACCOUNTS — DISTRIBUTION — PRINCIPLES OF EQUITY. — In settling the accounts of an administrator, and in ascertaining the distributive shares of those entitled to succeed to the estate of a deceased person, and in adjudging what shall satisfy the decree of distribution, the superior court, in the exercise of its probate jurisdiction, proceeds upon principles of equity, and may so frame its judgments as to do exact justice in regard to all matters properly entering into the account of the administrator, and which, in the application of equitable rules, affect the distributive shares of the estate.

ID. — PROBATE HOMESTEAD — ORDER SETTING APART SEPARATE PROPERTY IN FEE — FAILURE OF HEIRS TO APPEAL — TITLE MADE ABSOLUTE. — Where it appears, upon final distribution of the estate of a deceased person, that a homestead in fee out of the separate property of the deceased had, by a previous order of the court, been absolutely set apart to the widow and children of the intestate, and that the time for appeal from such order had elapsed without any appeal taken therefrom, the order is not void, but must be considered as in full force, however erroneous; and it is error for the court to distribute to the heirs, as part of the estate, the land so set apart. By force of the decree setting it apart, the title to the homestead is, as against the heirs of the deceased, in the parties named in that decree.

ID. — ORDER SETTLING ACCOUNTS — APPEAL OF ADMINISTRATOR — ATTORNEY'S FEES. — An administrator who appeals from an order of the probate court settling his account, and obtains a reversal of the order, should be allowed a reasonable sum on account of attorney's fees incurred by him on the appeal.

APPEAL from an order and decree of the Superior Court of Santa Cruz County settling the final account of an administrator, and making a final distribution.

The facts are stated in the opinion of the court.

*Warren Olney*, for Thomas W. Moore, Administrator and Appellant.

*A. S. Kittredge,* and *Charles B. Younger,* for other Appellants.

*Frank M. Stone,* for Respondents.

DE HAVEN, J.— William H. Moore died intestate in Santa Cruz County in 1871, leaving a widow, Helen M. Moore, and five children. In March, 1872, Thomas W. Moore, a brother of the deceased, was appointed administrator of his estate, and on July 27, 1891, an order and decree was made settling the final account of the administrator, and also making a final distribution of the estate. All of the parties affected by this order and decree appeal.

1. In the year 1877, the Moore ranch, belonging to the estate of the deceased, together with the cows thereon, was leased to one Bradley. The season was very dry, and the ranch did not produce feed enough to keep the cows during the ensuing winter, and they were pastured on a farm belonging to the administrator, Bradley agreeing to pay three hundred dollars therefor, one half of which would belong to the administrator and the balance to his tenant. It seems that Bradley failed to make the payment, and the administrator advanced to his tenant the portion to which he was entitled for the pasturage of the cows, and the court allowed this payment to the administrator as a credit in the settlement of his account. In so doing, the court erred. The cows were pastured for Bradley, and not for the estate, and the administrator, in paying his tenant, advanced the amount paid for the benefit of Bradley, and is not entitled to look to the estate for its repayment.

2. The court also found: "The reasonable rent for said Moore ranch, belonging to said estate, during the year 1888, was one hundred dollars per month. Said administrator failed to collect the rent of the said ranch from May 1st to September 1st of said year, to wit, for four months, and will therefore be charged the sum of four hundred dollars in his said account. The said admin-

istrator could have rented the said ranch for four hundred dollars more than he received from Fred W. Moore in the year 1879–80, and he will therefore be charged with that amount. At the time of the death of said deceased, he owned the note of one Rodriguez for one thousand dollars. The administrator collected the principal of said note, but did not collect the interest thereon, amounting to the sum of $202.50, for the reason that he did not push the collection thereof until after the said Rodriguez became insolvent. He will therefore be charged with said amount of $202.50, making a total charged to him under this article of $1,202.50."

The facts as thus found did not warrant the court in charging the administrator with either of the items referred to in the finding. It is not found that the failure to collect the rent of the Moore ranch for the period named, or the failure to lease the same for a larger rent, was due to the lack of ordinary care and diligence upon the part of the administrator in the management of the business of the estate, or that he did not act in good faith, and for what he deemed for the best interest of the estate; and in the absence of such a finding, the administrator should not have been charged with these sums. This results from the well-settled rule that the only measure of an administrator's duty is to act with fidelity, and with that degree of prudence and diligence which a man of ordinary judgment would be expected to bestow upon his own affairs of a like nature. So, too, in regard to the Rodriguez note. There is no finding that the balance due upon this note was lost by the negligence of the administrator. The failure to "push the collection of the note" may have been negligence, but is not necessarily so.

It frequently happens that indulgence to a debtor is a matter of prudence on the part of the creditor, and the court does not find as a fact that the administrator in this instance failed to exercise a reasonable judgment in failing to enforce the collection of the note by process of law. It is true that when an administrator receives a

note, and the maker thereof is solvent, but afterwards becomes insolvent, the burden of proof is on him to show that with due diligence he could not have collected it. (*Williams* v. *Petticrew*, 62 Mo. 460.) But while this is the rule as to the burden of proof, it does not help the finding under consideration. The defect in the finding is, that it fails to pass upon the question whether the administrator was guilty or free from negligence.

3. It appears that during one year the Moore ranch was leased to one Frederick Moore for $1,800, of which sum $1,650 was paid to the administrator. There is evidence tending to show that this amount was paid to the administrator, and our attention has not been called to any evidence in conflict therewith, and yet the administrator is only charged with $677.85 on account thereof. He should have been charged with the full amount he received, as shown by the evidence. The fact that no specific exception was taken to this item of the account, and that the attention of the court below was not called to the evidence showing that the administrator had not charged himself with the full amount which he received from this source, while it suggests a reason for the failure of the court below to detect the error in the account of the administrator as filed, is still not a waiver of the right of those entitled to succeed to the estate to have the error corrected, if it should appear to be such, in the course of the further proceedings to be had in the settlement of his account.

4. The court allowed the administrator $5,765.33 as commissions. This sum is in excess of the statutory percentage to which he would have been entitled as a matter of course, calculated upon the whole amount of the estate which he accounted for, and in so far as it exceeds the percentage fixed by the statute, is erroneous. We do not overlook the fact that, in addition to the fixed commissions allowed to the administrator by law, the court is authorized to make such further allowance as it " may deem just and reasonable for any extraordinary

service." (Code Civ. Proc., sec. 1618.)   But the administrator did not petition the court below for such extra allowance, and the court did not find as a fact that he rendered any extraordinary service for which he should receive such extra compensation.

5. The court below found that the sum of $6,000 was paid and advanced by the administrator, "in good faith, from the funds of the estate to Helen M. Moore, the widow of said deceased, who received the same with the knowledge that said money was a part of the funds of said estate"; and as a conclusion of law therefrom, the court held that the administrator should not be allowed credit for said sum in his account with the estate, but that he 'should be charged interest thereon from the date of its payment at the rate of seven per cent per annum, and that the said sum of $6,000 "should be deemed and treated as an advancement out of the funds of said estate to said widow, Helen M. Moore, as a distributee of the estate of said deceased," and that she should be charged with interest thereon from the date of its payment at seven per cent per annum, and that the said sum of $6,000, with the interest thereon, amounting in the aggregate to the sum of $11,959.60, should be credited to the administrator "upon distribution of said estate, as against any interest or distributive share said Helen M. Moore may have in said estate, and the amount thereof" should be paid by her to said administrator, "and he is entitled . . . . to retain her distributive share of any moneys of said estate as part payment thereof," and that as to any balance that may remain unpaid after the application of the share of said Helen M. Moore in the moneys in the hands of the administrator subject to distribution, the court, "as a probate court, has no power to declare a lien therefor upon the distributive share of Helen M. Moore in the real and personal property of said estate."

The decree of distribution was in accordance with this finding of the court and its conclusion of law, and both the widow and the administrator appeal therefrom. The

widow, Helen H. Moore, contends that the finding of the court, that she was paid the sum referred to out of the funds of the estate as an advancement to her, is against the evidence, and that the court erred in charging the same against her distributive share of the moneys of the estate. She does not deny that she received the money, but she insists that it was paid to her as the result of a personal transaction between herself and the administrator, and over which the probate court has no jurisdiction in this proceeding. It is unnecessary to go into any extended discussion of the evidence. It is sufficient for us to say, that, in our judgment, it was such as to fully support the finding of the court that the sum of six thousand dollars was paid to the widow out of the funds of the estate, and that she received the same upon the understanding and agreement that she was to accept it as her share of the estate. It makes no difference that the agreement upon which she received the money was not such as to be legally binding upon her, and that she has since successfully repudiated it. She has retained the money, and upon the most obvious principles of justice, this fact must be taken into account in the final distribution of the estate. In settling the accounts of the administrator, and in ascertaining the distributive shares of those entitled to succeed to the estate of a deceased person, and in adjudging what shall satisfy the decree of distribution, the superior court, in the exercise of its probate jurisdiction, proceeds upon principles of equity, and may so frame its judgments as to do exact justice in regard to all matters properly entering into the account of the administrator, and which, in the application of equitable rules affect the distributive shares of the estate. In the *Matter of Niles*, 113 N. Y. 556, the court say: "This matter of the administration of assets of the estate is peculiarly within the cognizance of equity, and a surrogate's court, in adjusting the accounts of executors and administrators, is governed by principles of equity as well as of law. (*Upson* v. *Badeau*, 3 Bradf. 15.) In the

exercise of the statutory powers conferred upon him to direct and control the conduct and settle the accounts of administrators and executors, the surrogate is not fettered, nor is he prevented by any rule of law from doing exact justice to the parties. He is supposed to administer justice in each case within his jurisdiction, according as the equities of the case demand; within the confines only of statutory provisions."

In accordance with this principle, it was held in the case of *Hyland v. Baxter*, 98 N. Y. 610, that the surrogate's court had jurisdiction, in the settlement of an administrator's account, to allow, as against the distributive shares of minors, moneys which had been advanced by the administrator for their maintenance without any previous order of the court. In that case, the court said: "It is true that an administrator, in making advances, acts without authority and at his peril, but this is true in every case where a parent, or one *in loco parentis,* or a trustee or guardian makes advances not previously sanctioned by the court or by the instrument creating the trust, and comes to the court for relief. The fact that the question is an equitable one, and depends upon equitable principles, is not a ground of objection to the jurisdiction. The surrogate's court is a court of limited powers and jurisdiction, but it has jurisdiction to determine questions, either legal or equitable, arising in the course of proceedings in the execution of powers expressly conferred, and which must be decided therein." And in 2 Woerner on Administration, section 519, after stating that distributive shares of minors should be charged with the money advanced for their support by the executor or administrator, it is said: "The same rule holds good in respect of payments to adult distributees and legatees. The accountant is entitled to credit against these to the full extent of payments made to them, whether ordered by the court, or not."

We have no doubt that this is the correct rule, and that when advances have been made by an administrator out of the funds of the estate to one entitled to share in

its distribution, the probate court, exercising the broad equitable powers which are conferred upon it as incident to its jurisdiction to settle the accounts of administrators and to distribute estates administered upon, may allow the administrator to reimburse himself from the distributive share of the person to whom such advancement was made.

It follows from what has been said that the court did not err in ascertaining the amount already paid by the administrator to the widow from the funds of the estate, and in decreeing that he might reimburse himself to the extent of her share of the moneys of the estate in his hands.

6. The superior court, as we have seen, held that the amount of money distributed to the widow might be applied by the administrator upon the amount found by the court to be due him on account of the advances made by him, but as to the balance due aft applying this money in his hands, the court held the ad no power to give him any relief. We think that in holding the court was in error. The administrator was entitled to a decree that the amount advanced by him to the widow was a charge against her entire distributive share of the estate, whether the same consisted of money or real estate, or both; if her share of the money of said estate distributed was not sufficient to pay such advances, the court should have made the distribution of her share of the real estate as subject to the payment of the amount found to be due from her to the administrator by the decree. The court had the right to so decree, as incident to its general power to state the account between the parties in accordance with justice and equity, and in the settlement of which account, on such a basis, the court must necessarily ascertain what the widow has already received from the administrator on account of her distributive share of the estate.

7. In August, 1877, the widow applied for a homestead to be set apart to her from the estate, and on April 26, 1881, the court made an order setting aside as a home-

stead thirty-five acres of land, with the dwelling-house and improvements thereon, "the undivided one half thereof to said widow," and an undivided one sixth to each of three children named. The land thus set apart as a homestead was the separate property of the deceased, and if it should be conceded that the court erred in setting apart any portion of it absolutely to the widow, still, it was only an error committed in the exercise of its jurisdiction, and the order was not void. No appeal was ever taken from this order, and it is now in full force. This being so, the court erred in distributing, as part of the estate, the land so set apart as a homestead. By force of the decree setting it aside, the title to the homestead is, as against the heirs of the deceased, in the parties named in that decree.

There are many other assignments of error, but to notice them would unnecessarily extend the length of this opinion. It is all-sufficient for the purposes of this case to say, that, except in the particulars above pointed out, we find no error in the rulings of the court.

The decree settling the account of the administrator and distributing the estate is reversed, and the court below is directed to find the facts in relation to the matters discussed in paragraphs 2 and 3 of the foregoing opinion, and thereupon to settle the account of the administrator and make distribution of the estate in accordance with the views above expressed. The administrator should be allowed a reasonable sum on account of attorney's fees incurred by him on this appeal.

The order and decree appealed from is reversed.

McFarland, J., Sharpstein, J., and Harrison, J., concurred.

Paterson, J., concurring. — I concur in the order reversing the judgment, and agree to every proposition stated by Mr. Justice De Haven, except the one relating to the homestead. I am of opinion, that it being *conceded* that the property out of which it was carved was

*separate* property of deceased, the court *could not* — had *no power* to — set aside a homestead *in fee;* that the fact being admitted and shown by the record, no appeal from the order was necessary; the court can now sɛ˟, and *should* say, on final distribution, that the homestead was set apart only for a limited period; that the time for dis. tribution having arrived, the land must be treated as part of the estate.

A petition for a rehearing having been filed, the court added to the above opinion, on December 30, 1892, the following statement: —

It was proper to charge the administrator with interest upon the sum advanced by him to the widow, and he is entitled to charge the amount of such interest against the portion of the estate to be distributed to her.

DE HAVEN, J., MCFARLAND, J., HARRISON, J., PATERSON, J.

Rehearing denied.