HOPPE et al. v. HOPPE et al.*

· FOUNTAIN v. HOPPE (HOPPE et al., Interveners).

No. 18,225; March 29, 1894.

36 Pac. 389.

**Mortgage—Foreclosure—Receivership.—Where a Complaint to** foreclose a mortgage prays a receiver to take and hold the premises, and collect and apply the rents and profits, third persons may intervene to assert an adverse title to the possession, and an interest in the rents.

---

*For subsequent opinion in bank, see 104 Cal. 94, 37 Pac. 894.

Probate Homestead—Setting Apart—Notice to Children.—
Code of Civil Procedure, section 1465, requires the court, if no home-
stead has been declared in decedent's life, to set one apart out of
the common property for the use of the surviving spouse and the
minor children. Section 1468 provides that such homestead is the
property of the survivor, if there be no minor children; otherwise,
it belongs half to such survivor, and half to such children. Held,
that an order setting apart such homestead, made without notice to
the minor children, cannot vest title in the widow alone, so devest-
ing the children's ·interest both in the homestead use and in the
inheritable fee.

Probate Homestead.—Though the Proceeding is in Rem, the .
Widow, as administratrix, cannot represent the children, further
than to withdraw the premises from administration.

Probate Homestead.—The Judgment Setting Apart a Home-
stead to the widow, though it recite the names of the children, does
not necessarily imply that these, or any of them, are minors, nor
adjudicate· their interests in the premises.

Probate Homestead.—If the Effect of the Order were to Vest
the fee in the widow, still she ·would be estopped to deny her trus-
teeship as to the minors' half interest.

Probate Homestead—Partition.—A Homestead Set Apart by the
probate court under Code of Civil Procedure, section 1465, for the ben-
efit of the widow and minor children, will not be partitioned until the
youngest child comes of age, unless the interests of the minors clearly
demand it. That the minor joins in the petition, and is represented
by a guardian ad litem, makes no difference, as the court will inter-
pose sua sponte.

Probate Homestead.—A Widow's Mortgage of a Homestead Set
apart to her by the probate court for the use of the family is not
void, as such homestead involves a joint use merely. Such mort-
gage attaches to the widow's interest, subject to the homestead use;
and there being minor children entitled, with her, to such use, as well
as to an undivided half of the fee, foreclosure is postponed till par-
tition may be had, viz., when the youngest comes of age, and mean-
time the homestead use includes both possession and the rents and
profits.

APPEAL from Superior Court, Sacramento County; A. P.
Catlin, Judge.

Suit by Herman W. Hoppe and others against Julia Hoppe
and W. A. Fountain for partition, consolidated with suit by
W. A. Fountain against Julia Hoppe (Herman W. Hoppe and
others intervening), to foreclose a mortgage. Partition suit

dismissed, and foreclosure decreed. Julia Hoppe and Herman W. Hoppe and others, separately, appeal. The dismissal was affirmed, and the judgment of foreclosure reversed.

Armstrong & Platnauer and Henry C. Ross, Jr., for appellants; Clinton L. White for respondent.

HAYNES, C.—The first of these actions (Herman W. Hoppe et al. v. Julia Hoppe and W. A. Fountain) was to obtain a partition of the lands described in the complaint, between the plaintiffs and Julia Hoppe; Fountain being made a party defendant because he claimed to be a mortgagee of the whole of the premises under a mortgage executed by the defendant Julia Hoppe. The second of these actions was afterward brought by Fountain against Julia Hoppe to foreclose said mortgage, and the plaintiffs in the first action intervened in the second, and by order of the court these actions were consolidated. Fountain demurred to the complaint in partition, and also to the complaint in intervention and to the answer of Julia Hoppe in the foreclosure case; and these demurrers were each sustained, and judgment dismissing the action for partition, and the complaint in intervention, and foreclosing the mortgage, was entered. The interveners and Julia Hoppe separately appeal from the judgment upon the judgment-roll, and a bill of exceptions setting out the order consolidating the actions, and excepting to the rulings upon demurrer. The facts set out in the several pleadings demurred to are substantially the same, and show the following facts: F. W. Hoppe died August 10, 1881, leaving the appellant Julia, his widow, and nine children, of whom these interveners were minors, the others being of full age. At the time of his death he was possessed of a tract of land, upon which he and his family resided, containing about one hundred and sixty acres, situated in Sacramento county, the same being community property. The widow was appointed administratrix, and on October 1, 1881, filed an inventory and appraisement of the estate, wherein said land was appraised at $4,000. She also filed a petition praying for an order setting aside said land, with the dwelling-house thereon, "for the use of the family of deceased," and alleged that the family consisted of herself and nine children, all of whom were named

therein, but their ages were not given, nor was it alleged that any of them were minors.   Upon this petition, on the seventh day of October, 1881, the court made an order, of which the following is a copy:

"In the Matter of the Estate of F. W. Hoppe, Deceased.

"Julia Hoppe, the administratrix of the estate of F. W. Hoppe, deceased, having on the 21st day of September, 1881, made application to the court, by petition, for an order setting apart, for the use and benefit of the family of said deceased, the real estate mentioned in said petition, together with the improvements thereon, as a homestead, and it duly appearing to the satisfaction of the court, from the papers on file in the matter of said estate, and other evidence, that said deceased was a resident of Sacramento county at his death, and left estate therein; that letters of administration were duly issued to said Julia Hoppe on the 5th day of September, 1881, and said administratrix duly returned an inventory and appraisement of said estate; that the family of said deceased consist of said Julia Hoppe, his widow, and Emma, Frank, Edward, Othelie, Clara, Robert, Herman, Louis, and Lena Hoppe, his children; and that said applicant, Julia Hoppe, is entitled to have the said premises set apart to her for a homestead, and that the same does not exceed in value five thousand dollars,—it is hereby ordered, adjudged, and decreed that all that certain piece or quantity of land lying and being in the county of Sacramento and state of California, and particularly described as follows, to wit, the east ½ of the northwest ¼ of section 34, township 8 north, range 5 east, and the west ½ of the northeast ¼ of section 34, township 8 north, range 5 east, Mt. Diablo base and meridian, containing about 160 acres, together with the dwelling house thereon, and its appurtenances, be, and the same is hereby, set apart to the widow of said F. W. Hoppe, deceased, as a homestead, and shall not be subject to administration, and it is further ordered that a certified copy of this decree be duly recorded in the office of the county recorder of Sacramento county.  Done in open court this 7th day of October, 1881.

"ROBT. C. CLARK,
"Judge of the Superior Court."

The complaint in intervention further alleged that in the application for letters of administration the names of the

interveners were stated, together with their respective ages; that no homestead had been selected, declared, or recorded by F. W. Hoppe and his wife, or either of them, prior to his death; that at the time said homestead was set apart they were minors, the eldest being then fourteen years old and the youngest five; that the court did not fix a day for the hearing of said petition; that no notice was given, in any manner, of the hearing; that they had no notice of the hearing; that they had no guardian, general or special; and that they were not represented at the hearing by attorney appointed by the court, or by any person. On December 20, 1888, Julia Hoppe executed a mortgage upon the whole of the homestead to respondent, Fountain, to secure the sum of $5,000, and it was this mortgage which was foreclosed; and, in regard to the mortgage, it was alleged that Fountain took it with full knowledge of all the facts.

Appellants contend that the order setting apart the homestead, rightly construed, was an order for their benefit, and vested title to an undivided one-half thereof in them in accordance with section 1468 of the Code of Civil Procedure; and, if that proposition cannot be sustained, that the order must be held void, as, if sustained, it would have the effect of devesting them, not only of their homestead rights under the statute, but also of their inheritance as heirs, without notice, or any opportunity of protecting their interests; while respondent contends that the order was simply erroneous; that it was appealable, and, not having been appealed from, it is a final judgment, and vested the title in the widow, and, being a proceeding in rem, no notice was required; and that, therefore, his mortgage is valid as against the interveners, as well as the widow.

1. As to the complaint in intervention, respondent insists that the demurrer was properly overruled, for the reason that the interveners assert a hostile title, and that such title cannot be litigated in an action to foreclose the mortgage. It was so held in Ord v. Bartlett, 83 Cal. 428, 23 Pac. 705, and Cody v. Bean, 93 Cal. 579, 29 Pac. 223, and in other cases cited therein. So far as the foreclosure proceeding is concerned, it can have no effect upon the title of the adverse claimant, unless he is made a party. It is only such title as the mortgagor may have that would be acquired by the purchaser at a foreclosure sale,

and the title of the adverse claimant may be afterward litigated with the purchaser, unaffected by the decree in foreclosure. But this case presents a feature distinguishing it from the cases above cited, though it is true in this case, as well as in those, that the title of the interveners would not be affected by the foreclosure. Respondent's complaint alleged that the mortgage contained a covenant that, in any proceeding to foreclose it, the court should, upon the filing of the complaint, or at any time thereafter, if requested by the plaintiffs, name some disinterested person as receiver, and authorize such receiver to at once take possession of the mortgaged premises, and collect the rents and profits thereof, and apply them to the satisfaction of the judgment, and to continue in the use and possession of the premises, and collect the rents and profits, until the premises should be redeemed, or title vested in the purchaser, and prayed that, upon the filing of the complaint, such receiver be appointed by the court. Here it is apparent there was an attack upon the right of the interveners to the possession of their interests in the homestead, and a demand that the rents and profits of the whole of the land, including their shares, should be taken and applied toward the satisfaction of the plaintiffs' mortgage. To such issue the interveners had a right to come in, and plead their title, and thus protect their possession and their interest in the rents and profits of the land, whether any part of such rents and profits accrued to the adults, personally, or pertained generally to the homestead right. The demurrer to their complaint in intervention should therefore have been overruled, unless the facts stated therein failed to show that they had an interest in the land which would be affected by the relief sought in plaintiffs' complaint. It therefore becomes necessary to consider the principal question in the case, viz., whether the order setting apart the homestead had the effect of vesting the entire title to the homestead in the widow, and barring the minor children of all right therein.

At the time of the death of F. W. Hoppe, and at the time the homestead was set apart, section 1465, Code of Civil Procedure, as amended in 1880, and section 1468, as amended in February, 1881, were in force: 3 Deering's Codes. Under section 1465, where no homestead had been declared in the lifetime of decedent, it is made the imperative duty of the court,

either of its own motion, or upon petition, to set apart a
homestead out of the common property for the use of the
surviving husband or wife "and the minor children"; and
section 1468 provides that: "When property is set apart to
the use of the family in accordance with the provisions of this
chapter, if the decedent left a widow or surviving husband,
and no minor child, such property is the property of the
widow or surviving husband. If the decedent left also a
minor child or children, the one-half of such property shall
belong to the widow or surviving husband, and the remainder
to the child, or in equal shares to the children, if there be more
than one." The questions arising upon the order of the court
setting apart the homestead, and relieving the land from
administration, must be solved in the light of the code provi-
sions above mentioned, and the law relating to the jurisdiction
of courts and the conclusiveness of judgments; the ultimate
questions being: (1) In whom did the order vest the title to
the homestead? And (2) if it vested the entire title in the
widow, are the interveners estopped by the judgment or order
from now asserting the right which the demurrer concedes
they were entitled to under the statute, and which should
have been secured to them by the order? As against the inter-
veners, respondent's rights must rest upon the fact that a
homestead was set apart, as otherwise the land was not re-
leased from administration, and in such case the mortgage
could only affect such interest as the widow might have in the
land subject to administration. Clearly, it could not affect
the rights of creditors, nor the interests of the children, as
heirs of their deceased father, unless the land was released
from administration. To sustain his judgment as against the
interveners, he must therefore go a step further, and show
that the order in question not only relieved the land from
administration, and took away from the minors their right to
an undivided one-half of the homestead, but also the rights
of all the children as heirs. That all this could be accom-
plished without notice to the children, and without being in
any manner represented or heard, is sufficiently startling to
challenge our most careful consideration. It is doubtless the
general rule that no one is concluded or bound by a judgment,
in the absence of notice, actual or constructive. It is said,
however, that the legislature may authorize a judgment to be

rendered against a party without notice. But, "if the expression used in the statute will admit of a doubt, it will not then be presumed that a construction dispensing with notice can be agreeable to the intention of the legislature, the consequences of which are so unreasonable. But where the signification is manifest, there is no power of dispensation in the courts": Flint River Steamboat Co. v. Foster, 5 Ga. 194, 48 Am. Dec. 248. See, also, Meade v. Deputy Marshal, 1 Brock. 324, Fed. Cas. No. 9372, where a similar statement of the law is made by Chief Justice Marshall. Assuming, as respondent contends, that the statute does not require notice of a proceeding to set apart a "probate homestead," under the principles laid down by the cases above cited, it follows that the action of the court, in the absence of notice to the minors, can go no further than the statute expressly authorizes; and, if it assumes to take away from anyone not before the court a right given by the statute, such person cannot be bound by the judgment. This also results from a principle applicable to all judgments, viz., that no one, not even a party with notice, is bound by the adjudication of a fact not necessary to be adjudicated in the proceeding: Greenleaf on Evidence, sec. 534. That a proceeding to set apart a probate homestead is in rem is conceded; but the question to be solved is, how far, and as to what matters, a judgment in rem is conclusive. A judgment strictly in rem is binding and conclusive on all the world, while a judgment inter partes only concludes parties and privies; and hence it is that, in setting apart a homestead, only those facts which are essential to the determination of the status of the property are conclusively adjudged. For such purpose the executor or administrator represents all persons affected by the order, but it is obvious that he cannot represent adverse interests in the homestead so set apart, so so as to bind them, nor litigate for them a controversy as to whether A is or is not a minor, his age being disputed. The probate of a will, for example, does not establish the fact that the dispositions therein were not beyond the power of the testator. The result is that it is the judgment of the probate court on the will, as distinguished from specific findings, or facts necessarily involved therein, that is binding on all persons: Bigelow on Estoppel, p. 222. The case of De Mora v. Concha, 29 Ch. Div. 268 (decided in 1885), is a most instruc-

tive case upon this subject. A native of Chile made his will in London and shortly thereafter died there. A caveat having been entered on behalf of the testator's daughter, the will was propounded by the executors, they alleging that the testator was domiciled in England. The daughter alleged that the testator was domiciled in Chile, and that his will was not executed according to Chilean law. The judge of the probate court made a decree declaring the will valid, found that the testator was domiciled in England, and decreed probate to the executors. The daughter afterward filed a bill against the executors, alleging that the testator was a domiciled Chilean, that his will, being executed in England according to English law, was good by the law of Chile, but only so far as the testator could, by the law of Chile, dispose of his property by will; that, according to that law, he could only dispose by will of one-fourth of his personal estate; and that the other three-fourths belonged to the plaintiff. The executors set up the decree of the probate court, that he was domiciled in England, as a bar. It was held that the decree of the probate court was not conclusive in rem as to the domicile, for that it did not appear that the decree was necessarily based on the finding as to domicile; and held, further, that the finding by the probate court as to domicile was not binding inter partes, as between the daughter and the legatee, for that it was a finding between the daughter and the executors; that the executors could not, by litigating a question of domicile, which it was not necessary to decide for the purposes of the suit, conclude the legatee, and as the legatee was not bound the daughter could not be bound. So far as the power of the court to declare a homestead was concerned, the existence or nonexistence of minor children was a wholly immaterial fact, not necessary to be either considered or decided, since it could not affect either the character, extent, duration or value of the homestead. Nor was it in the power of the widow, as administratrix, to represent the minor children, or anyone interested in the estate, whether heir or creditor, further than the proceeding was strictly in rem, viz., to withdraw or relieve the land from administration, and devote it to homestead purposes for those whom the statute declared to be entitled to it. The proceeding, in the absence of parties duly notified, could go no further than to give effect to the legislative provision,

37

leaving the parties so entitled to assert their interests in the homestead whenever a hostile claim should make it necessary.

Respondent further contends that the order in question was appealable, and, not having been appealed from, is final and conclusive. This question was considered in the recent case of In re Moore, 96 Cal. 530 (par. 7), 31 Pac. 584, where it was held that an order setting apart a homestead, "the undivided one-half thereof to the widow," and the undivided one-sixth to each of three children named, out of the separate property of the deceased, though erroneous, in that it should have been set apart for a limited time, only, and not in fee, no appeal having been taken therefrom, the title was in the persons named in the decree, as against the heirs of the deceased. Mr. Justice Paterson dissented upon this point, while concurring in the reversal upon other grounds, and placed his dissent squarely upon the ground that the court "could not—had no power to—set aside a homestead in fee," out of the separate property of the deceased, and that no appeal from the order was necessary. But that case is clearly distinguishable from this. There the minor children were adverse parties. The widow in that case petitioned for a homestead. The children appeared by their guardian, and filed objections to granting the prayer of the petitioner. Their objections prevailed, the petition was denied, the petitioner appealed, and the supreme court reversed the order, and remanded the case for further proceedings: See Estate of Moore, 57 Cal. 437. After the case was remanded the superior court made the order referred to, and that order was not appealed from. In that case the minor children were before the court, and were represented by their guardian, and had an opportunity to litigate every question relating to the homestead, and to make a record upon which this court could have reviewed any alleged error, while in this case the minor children were not in fact before the court, nor constructively present for any purpose, except in so far as the proceeding was in rem. For that purpose they were represented by the administratrix, who was the petitioner, but who certainly was not authorized to represent them in a proceeding by which she acquired, as respondent contends, their interest in the homestead. Besides, neither the petition nor the order disclosed the fact that these interveners were minors, and it is at least questionable whether an appeal upon that record

would not have been fruitless. But the rights of the minors were not adjudicated. The statute is mandatory. The judge must set apart the homestead; the word "may" in section 1465, Code of Civil Procedure, being used for "shall": In re Ballentine, 45 Cal. 696. "That only is deemed to have been adjudged in a former judgment which appears upon its face to have been adjudged, or which was actually or necessarily included therein, or necessary thereto": Code Civ. Proc., sec. 1911. That there were children is recited in the order, but it does not appear that the court investigated or decided as to the age of any of them, for such investigation was not necessary to the validity of the order setting apart a homestead; and, as the minors were not parties to the proceedings for the purpose of litigating their right to an interest in the homestead, the order should not be construed as having excluded them. The order does not necessarily affirm or deny that any of the children were minors. If the homestead could not have been set apart unless there were minor children, the inference that the court found that there were minor children would be inevitable; but, as the homestead must have been set aside if there had been no minor children, there being a widow, an inference that the ages of the children were adjudicated can only be drawn by argument, and such adjudication cannot be inferred by argument or construction: Freeman on Judgments, sec. 258, and cases there cited. This proceeding being in rem, and without notice, all that could be properly adjudged was the status of the property, viz., that it was a homestead, and was relieved from administration; and the order should be so read and construed, if its language will permit it. ·In Watson v. His Creditors, 58 Cal. 558, speaking of a homestead declared before the death of either spouse, this court said: "The law fixes the rights of the parties, and the title by which the property shall be held; and, when the statute declares that the title shall vest absolutely in the survivor, no order of the probate court could make it the joint property of the husband and the children of the husband and wife." And in Rich v. Tubbs, 41 Cal. 34, in relation to the same character of homestead, it was said: "The purpose and effect of the order is merely that the property be relieved from administration. The question of title, as between claimants, is to be determined in another forum." We think that only that effect

should be given to an order setting apart a probate homestead. If it be true that the statute does not require notice, such ought to be the only effect of the order. If, however, the effect of the order was to vest the title in the widow, she is estopped to deny the right of the minors therein, and, if necessary for their protection, would be held a trustee of that title for them, to the extent of their interest; for, as they are not estopped by the judgment from asserting their interest, nothing more than the legal title could pass to her by the judgment. If the mortgage to Fountain had not been executed, I apprehend that no one would contend but that the interveners could successfully assert their right to an undivided one-half of the land. Whether an encumbrancer without notice other than that imparted by the record in the proceeding to set apart the homestead, seeing therein the names of the children, their ages not being stated, would not be obliged to presume that they were all minors, and so interested in the homestead, it is not necessary to decide, inasmuch as the demurrer admits that he took the mortgage with knowledge or notice of the fact that the interveners were all minors, and in such case he could be in no better position than his mortgagor.

2. The demurrer to the complaint for partition was properly sustained. For the purposes of this demurrer, we assume that the facts stated show that the petitioners have an interest in the homestead to the extent claimed; but we think that a homestead cannot be partitioned, at least until the youngest child attains his majority. There are many instances in which the right to partition must be denied because the property has been charged with some trust, or dedicated to some purpose which would be defeated or impaired by the division of such property. In Outcalt v. Appleby, 36 N. J. Eq. 81, among other reasons for refusing a partition, it was specified that the testator did not contemplate a division of the residuary estate as then proposed; that by his will he expressed his wish that the trustees hold the improved property unsold for ten years, unless, in their judgment, it would not be advisable to do so. In Gerard v. Buckley, 137 Mass. 478, the intention of the testator was also held to control the right of partition: See, also, Hill v. Jones, 65 Ala. 214. In Missouri the statute vests in the family of the deceased husband an estate in his realty which does not cease to exist until the widow dies and the

youngest child becomes of age; and it was held that a purchaser from the mother of a minor child, who has a homestead right in the property bought, is not entitled to partition against the child; that the child is entitled to a homestead in the property, and not merely an aliquot part thereof: Rhorer v. Brockhage, 13 Mo. App. 397. So in Trotter v. Trotter, 31 Ark. 145, it was held that there can be no partition of the homestead. The question whether there may be a partition of a probate homestead has not heretofore been presented to this court. Principles, however, have been announced which I think are conclusive of the question. In Estate of Moore, 57 Cal. 442, 443, it was said: "A homestead right, or a right to have a homestead, is not a right which vests under the law by succession. It is a right bestowed by the beneficence of the law of this state for the benefit of the family. . . . . The homestead, when set apart, is to be set apart for the benefit of the widow and children. Every minor child has' an interest, and has a right to be named in the decree. The property set apart is to be a home for them all, she, the widow, taking her place as the head of the family. It certainly could not be said that her deed, conveying her interest as successor, would interfere with and defeat the purpose of the law in giving the family an abiding place." And quoting from Bates v. Bates, 97 Mass. 395, the court further said: "The estate of homestead is one of a peculiar nature. It is a provision by the humanity of the law for a residence for the owner and his family." It is true that section 1468, Code of Civil Procedure, provides that the homestead so set apart shall belong to the surviving husband or wife, if there be no minor child or children; but, if there be a minor child, one-half of the homestead shall belong to the surviving husband or widow, and the remaining one-half to the minor child, or in equal shares to the minor children, if there be more than one. But this provision only declares the ultimate ownership, and does not at all affect the use of the property as a family homestead. The homestead is of the same character, value and extent, whether there be one minor child or several; and the necessity for the continuance of the homestead until the youngest child has attained majority is as imperative as the creation of the homestead when there was but one. In this case one of the children is still a minor. If the homestead is partitioned, it

is destroyed as a homestead, and the interest of this minor is restricted to one-eighth of what had been the homestead. Which of the parties, in case of partition, shall have the dwelling-house which has sheltered the family? And, if allotted to another, can the minor still claim shelter therein? Has he not received his portion, and shall he now say that he has any right in the portion allotted to another? A partition is therefore a destruction of the homestead, an undoing of the imperative requirement of the statute that a homestead shall be set apart for the use of the family (In re Ballentine, 45 Cal. 696), and would be in violation of a wise and beneficent public policy; and surely, if the will of a testator, expressing his desire or intention that his property shall be held in common and not divided, is sufficient to prevent a partition, the obvious purposes and intent of the statute ought to be held sufficient. It may be said, however, that the minor has joined in the petition for a partition of the homestead, and is represented therein by a guardian ad litem, and that, therefore, no objection to a partition should be urged in his behalf. But the court will, sua sponte, interpose for the protection of a minor, and especially where, as here, a question of public policy is involved. We do not say that no case could arise where the court would not order a partition of a homestead. Circumstances might exist where it would be the duty of the court, for the benefit of the minor, to decree a partition, or order the interest of the minor to be sold. But this qualification need not be discussed. It is sufficient to say that no reason appears upon the face of the complaint why the homestead should be partitioned during the minority of one of the plaintiffs, and therefore it does not state facts which would authorize the partition of a homestead, which, if it can be partitioned at all during the minority of any of the beneficiaries, could only be done under special circumstances alleged in the complaint and proved at the hearing. Even in case of application by or on behalf of infants for the partition of lands held under an ordinary tenancy in common, and not affected by homestead or other special right, it is said the courts are specially charged with their protection; and, if the conclusion is reached that the partition will not prove beneficial, it ought to be denied: Freeman on Cotenancy, sec. 457;

Hartmann v. Hartmann, 59 Ill. 104; Freeman v. Freeman, 9 Heisk. 306.

3. The answer of Julia Hoppe in the foreclosure case set out all the facts in relation to the homestead hereinbefore stated, and alleged that the mortgage was void and a cloud upon the homestead, and prayed that it be canceled. The question is made whether the mortgage created a lien upon her interest in the land, whatever that interest may be. Unquestionably, she is the owner of an undivided half. It is contended, however, that a homestead cannot be mortgaged without the concurrence of all who are interested in the title; and cases are cited of homesteads declared upon community property in the lifetime of both spouses, in which it is held that neither can convey any interest in the homestead by a separate deed. These cases are not in point. The effect of such declaration of homestead is to create a joint tenancy with survivorship. It ceases to be community property, and therefore the husband cannot convey it by his deed. Nor does it become the wife's separate property, and she cannot convey it. And, as the statute provides the mode in which it can be conveyed, neither, separately, can convey any interest therein. But upon the death of one of the joint tenants the estate vests in the survivor, and may then be conveyed or mortgaged. A probate homestead does not create a joint tenancy, though it creates a joint use.

It is further argued that, if the widow may mortgage her interest in the homestead, the mortgagee may, foreclose; that the purchaser would become tenant in common with the minors, the homestead be destroyed, and the object of the legislature defeated. So far as homestead purposes are concerned, the principal object of the statute is accomplished when the youngest child arrives at majority. The homestead may then be partitioned, and each hold his interest in severalty. We have already held, in considering another branch of this appeal, that a partition cannot be had until all the children have arrived at majority; and, if this cannot be done by action, it cannot be accomplished in an indirect manner. No stranger can be admitted to the benefits and privileges of the homestead by succession to an undivided interest. But all this does not make the mortgage void, though it may postpone the possession of the purchaser. As the widow is the head of the

family, and as the homestead must continue until the minors have all reached majority, she has the same interest in retaining the possession and controlling the rents and profits that the interveners have, and therefore, though her mortgage is not void, her answer is not obnoxious to a general demurrer.

The order sustaining the demurrer to the complaint in partition and the judgment dismissing that action should be affirmed. The judgment foreclosing the mortgage should be reversed, with directions to overrule the demurrers of respondent to the complaint of the interveners and to the answer of the defendant, with leave to respondent to answer the complaint in intervention.

We concur: Searls, C.; Belcher, C.

McFARLAND and FITZGERALD, JJ.—For the reasons given in the foregoing opinion, the judgment dismissing the action for partition is affirmed, and the judgment foreclosing the mortgage is reversed, with directions to the court below to overrule the demurrers to the complaint in intervention, and to the answer of Julia Hoppe, respectively, with leave to the plaintiff to answer the complaint of the interveners.

DE HAVEN, J.—I concur in the judgment.