[Civ. No. 890.   Third Appellate District.—November 15, 1911.]

In the Matter of the Estate of WILLIAM H. LOHEIDE, Deceased.   W. L. LOHEIDE, Administrator, Appellant; WM. H. MacKINNON, Respondent; W. H. LOHEIDE ESTATE COMPANY, a Corporation, Representing Heirs and Distributee, Respondent.

ESTATES OF DECEASED PERSONS—ACCOUNT OF ADMINISTRATOR—FAILURE TO CREDIT NOTES DUE TO ESTATE—ABILITY TO PAY—INJURY TO BUSINESS—INSUFFICIENT EXCUSE.—An administrator personally indebted to the estate on promissory notes, which he is financially able to pay, and who never credited the estate therewith on the insufficient ground that to pay the same would have sacrified his private business, was properly charged with the amount thereof in his final account as money on hand for distribution. His primary duty was to the trust assumed, and he was not authorized to show favor to himself as a debtor to the estate greater than to any other debtor. He had no right to use the credit of the estate to promote his personal gain, or to maintain a business which might suffer if he drew out of his capital enough to pay what he owed the estate.

ID.—LIABILITY OF ADMINISTRATOR ON BOND.—Inasmuch as an administrator who is chargeable with a debt due from himself cannot sue himself to enforce the same, and yet it being his official duty to collect and pay the same for the estate, he must be held officially liable for any money he could have applied thereon at any time during his official term. If he has not so applied it when able to do so, he has not faithfully discharged his trust according to law, and he and the sureties on his official bond may be held liable for the payment of the same. It is only as he had the means to pay that he and his sureties are chargeable with the money which ought to be in his hands.

ID.—RIGHTS OF HEIRS TO FULL ESTATE—ENFORCEMENT OF DELINQUENCY. Even if there are no creditors interested in the notes due from the administrator to the estate charged in his final account, the heirs are nevertheless entitled to have brought into the estate for distribution all that legally and rightfully belongs to the estate, including such notes, and if the administrator is then personally insolvent, though able to pay the same at any time during his administration, the heirs may look to the sureties on his official bond to enforce his delinquency.

ID.—DEBT OF ADMINISTRATOR AS HEIR OR DISTRIBUTEE — CHARGE TO DISTRIBUTIVE SHARE — NEW NOTES TO COMPANY REPRESENTING

HEIRS.—The indebtedness of the administrator to the estate, when
he is also an heir, and as such interested in the estate, may be
deducted from his distributive share. It cannot be applied to the
detriment of the estate or to the rights of other heirs or distributees.
Where new notes were given by the administrator to a company
representing the heirs upon distribution to keep them from out-
lawing against the estate, they are to be treated as his personal
debt, and not intended or received as an advance upon the dis-
tributive shares of any other heirs, but as being only a charge upon
his distributive share, where there is nothing to indicate a contrary
intent.

ID.—RULE UPON DISTRIBUTION AS TO CREDITS DUE TO ADMINISTRATOR.—
While an executor or administrator is to be reimbursed for pay-
ments made upon distributive shares, the credits therefor are not
to be given upon the settlement of accounts, but are to be retired
therefrom, and considered only upon the distribution of the estate.
This rule will apply to all advancements made to the heirs by the
administrator.

ID.—DUTY OF COURT IN CHARGING ADMINISTRATOR WITH NOTES—INAD-
VERTENT RULING UPON EXCEPTIONS IMMATERIAL.—It was the duty
of the court correctly to charge the administrator with the notes
he ought to have paid, and to satisfy himself as to the correctness of
the account, regardless of whether his attention was called to it
in exceptions taken thereupon; and even if exceptions so taken
were inadvertently disallowed, in connection with other exceptions
to the account not approved, such inadvertent ruling is not ground
for a reversal of a properly corrected account of the administrator.

APPEAL from a decree of the Superior Court of Humboldt
County settling the final and supplemental accounts of an
administrator.    George D. Murray, Judge.

The facts are stated in the opinion of the court.

Denver Sevier, C. P. Cutten, and Thomas, Frick & Beedy,
for Appellant.

Thomas, Grestle, Frick & Beedy, and Charles P. Cutten, for
United States Fidelity and Guaranty Company, Surety for
Appellant.

J. F. Quinn, and L. F. Puter, for Wm. H. MacKinnon, Re-
spondent.

G. W. Hunter, for W. H. Loheide Estate Company, Re-
spondent.

CHIPMAN, P. J.—This is an appeal by W. L. Loheide, administrator of the estate of William H. Loheide, deceased, from an order and decree of settlement of his final and supplemental accounts. . In his final account he charged himself with a large number of items commencing October 26, 1907: "To cash on hand in Humboldt County Bank, $695.09," and to various sums of money received from various sources to January 18, 1909, amounting in all to $14,120.30. To this he adds the following:

"1907, cash on hand in Hibernia Savings & Loan

    S'y S. F................................$2164.94
"Dec. 31/07 Cash interest, in Hibernia S. & L. S'y..   39.64
"June 30/08 Cash  do      do      do  ..   4.52

    "Total receipts ......................$16329.40"

On the credit side of his account are found, on several pages of the transcript, the items of payments commencing October 11, 1907, and ending January 29, 1908, amounting in all to $17,173.71, leaving due the administrator, $844.31.

Written objections and exceptions were filed by William H. MacKinnon as assignee of an interest in said estate, attacking the correctness of a large number of these credit items, on the ground that none of the amounts was incurred or was necessary in the management of the estate but related to matters personal to the administrator. Special objection is made to two items of disbursement of $1,314.45 each to the administrator and his attorney on the ground that the administrator "is indebted personally to said estate in the sum of $25,995.22½ and interest on two promissory notes due and payable before the filing of said final account, and which amount said administrator has failed to account for to said estate, . . . and he has failed to pay the same, being financially able to do so, and not accounted in cash to the estate for the same."

On March 15, 1910, the administrator filed a supplemental account as to "amounts advanced by administrator W. H. Loheide, deceased, subsequent to report dated Jan. 29, 1909." Then follows a large number of items, commencing January 6, 1909, and ending March 7, 1910, aggregating $7,213.25. He

then states what purports to be an account between the administrator and W. H. Loheide estate, "Jan. 29/09 to Mch. 15/10:

"By charges against estate..............$7213.25
"　　　"　　Mrs. M. E. Speegle......... 1698.99
"　　　"　　G. H. Loheide............. 460.20 $9372.44

### Dr.

"To amt. collected Jan—09 to Mch.
　　15—10........  ............  ......　　2935.06

　　　　　　　　　　　　　　　　　　　　　　$6437.38
"Paid for writing in connection with the
　　account ...............  .............　　7.50

"Bal. due administrator................　　6444.88"

The charges to Mrs. Speegle and G. H. Loheide are in the nature of advancements to them as heirs of deceased.

He then charges himself with sundry items of date March 15, 1910, as receipts subsequent to report of January 28, 1909, amounting to $2,935.06.

To many items of this supplemental account the W. H. Loheide Estate Company makes objection. From its objections it appears that W. H. Loheide died on October 7, 1907, and W. L. Loheide, appellant, was appointed administrator of said estate; that deceased left as his heirs four children— W. L. Loheide, the administrator of said estate, Manda E. Speegle, George H. Loheide and Robert C. Loheide, all of whom were of age at their father's death; that during the month of January, 1908, the said heirs formed a corporation called the W. H. Loheide Estate Company, and, on January 29, 1908, said heirs conveyed to said corporation all their interest in and to the property of said estate, "subject to the administration of said estate." The items of the final and supplemental accounts objected to will be hereafter considered so far as now in question. The estate company also charges mismanagement on the part of the administrator and prays for his removal from his trust.

Contestant MacKinnon excepts to each and every item of the supplemental account, because the administrator had not accounted for the sum of $25,995.22½ and interest due the estate from the administrator personally on the two certain

promissory notes heretofore mentioned. The matter thereafter came on to be heard and, on April 18, 1910, the court filed its opinion wherein it directed the manner in which the final and supplemental accounts should be settled, and it was adjudged that the administrator, "in addition to being charged with the moneys with which he has charged himself in his said final account, be also charged with money in the amount that was due January 27, 1909, on notes of William L. Loheide and E. D. Vorrath to W. H. Loheide for $20,000 dated January 29, 1904, to wit, the sum of $20,000, and with moneys in the amount that was due January 29, 1909, on the note of William L. Loheide and E. D. Vorrath to W. H. Loheide for $5,990.45 dated August 10, 1907, to wit, the sum of $3,690.45, and with all the other property belonging to said estate which has come into his possession and be credited with all said property which remains or which should remain on hand for distribution as well as with all disbursements which are proper charges against said estate, as hereinafter specified, and that said final account be and the same is hereby amended, corrected and restated as follows, to wit:"

The court then states the debit side of the account, charging the administrator with the moneys he charged himself with, also with the promissory notes already mentioned, making the total amount of money thus charged to be $40,019.85. The other items are all descriptive of property taken from the inventory and the appraised value carried out, aggregating $84,081.87. Total charges, $124,101.72.

The court then credits the administrator—First, with "property hereinabove charged to the administrator and remaining on hand for distribution": Money in the sum of $32,316.63. Then follow the items charged from the inventory, aggregating in all $116,398.50. Second, the administrator is credited with disbursements which are specifically mentioned and which, together with previous items, aggregate the sum with which the administrator is charged, to wit, $124,101.72.

The court then takes up the supplemental account and restates it, charging the administrator with receipts, $2,935.06. The court credits the administrator with disbursements in the sum of $2,727.22. Excess of receipts over disbursements, $207.84.

The result of this accounting, as we understand the findings, is that the administrator is charged with

cash on hand .............................$32,316.63

And the balance above......................... 207.84

                                         _____

                                          $33,524.47

And also with certain property in his keeping remaining for distribution. This cash balance includes the promissory notes due the estate from the administrator, and the principal question presented on the appeal is as to the correctness of the court's decision in charging these notes up as money on hand for distribution.

It appears from the evidence that appellant and one Vorrath executed their promissory notes to W. H. Loheide, one of which was for $20,000, dated January 29, 1904, and the other for $5,990.45, dated August 10, 1907, on which latter there remained unpaid the sum of $3,690.45. Deceased died October 7, 1907, and these notes became assets of his estate. A corporation was formed by the heirs to which they conveyed their interest in all the property of the estate. The articles of incorporation were read in evidence and marked "Exhibit A" and the deed of the heirs to the corporation was also read in evidence and marked "Exhibit B," but neither of these instruments appears in the record. The administrator, appellant, testified: "I, myself, owed the estate on two promissory notes, $25,945. These notes, I presume, were due and payable prior to the date of filing my account. I have not collected these notes, but I have paid them by giving the estate new notes. The notes would have outlawed if Mr. Vorrath and myself had not given new notes. [This could not have been true of note made in 1907.] I made out the new note to the Loheide Estate Company. . . . I was engaged in business at the time of my father's death and up to the date of filing the final account. That business was on a paying basis. . . . That was a solvent business. The assets of it were worth thirty thousand dollars. . . . We owned the stock of goods as partners. Mr. Vorrath and I were on each of these notes. . . . I have also credited myself with . . . commissions and also attorneys' fees. I ask the court to allow me credit for these two items, notwithstanding that these notes which I owed the estate and upon which there is still a

balance due of $23,695, remain unpaid and although I was solvent and had assets during the administration of the estate. . . . If I had paid these notes when due I would have had to sacrifice the business to do so. The note was good and there was no reason for forcing it to be paid. It would have sacrificed the business to do it. That is, my own private business. When I gave this new note to the corporation, the corporation did not pay into the estate as cash the amount of the note I gave. The old note was an asset of the estate and was appraised at its face value. . . . The new notes were dated the second day of February of this year (1909). The old notes would have outlawed on Sunday, the day before. Mr. Vorrath executed them with me. They were executed to the W. H. Loheide Estate Co.; when the final distribution is made, the corporation will own the notes.'' It further appeared that at the hearing of his account the administrator was insolvent and that he subsequently made an assignment for the benefit of his creditors and that the United States Fidelity and Guaranty Company is security upon the administrator's bond for $80,000. As he was insolvent in January, 1909, he must have been insolvent when he gave his new note in February. There is evidence that the administrator was an officer of the corporation—its secretary and manager—and had control of most of the shares; that he borrowed money from the Bank of Eureka and promised to secure the loan by pledge of shares of the corporation; that he tendered a certificate, and when its genuineness was challenged he admitted it was fictitious and that he had already pledged his shares to another bank. The corporation thereupon assumed this particular liability, but it appeared that he was still indebted in a large sum to the Bank of Eureka, among other creditors. If it be true that the notes given by Loheide & Vorrath would have ''outlawed'' on February 2, 1909, it must follow that they were due and payable four years before that date and during the entire period of appellant's administration.

The claim of appellant now is that ''the doctrine of setoff applies at once and automatically as of the date of the death of the creditor and ancestor,'' citing 2 Woerner on Administration, section 564, and numerous cases found cited in the notes to the text. The author says: ''The indebtedness of a legatee or distributee constitutes assets of the estate, which it

is the executor's or administrator's duty to collect for the benefit of creditors, legatees and distributees. Hence such indebtedness may be deducted from any legacy or distributive share of the debtor.'' Many phases of this doctrine are presented in the text, but the cases seem to be illustrative of the right in the estate to have the distributive share of an heir set off against his indebtedness to the estate. The doctrine is never applied to the detriment of the estate and cannot be invoked to protect the administrator who is at once a distributee of and a debtor to the estate. In some jurisdictions a lien is held to exist on the distributee's share which will be enforced for the purpose of equalization among the heirs. But it has otherwise been held. See note 2, star section 1237, and Mr. Woerner says it is doubtful whether an administrator has any prior right to demand payment of a debt due by an insolvent heir to the intestate out of the land in the hands of such heir, or his vendee or attaching creditor. In this state it was held, in *William Hill Co.* v. *Lawler,* 116 Cal. 359, [48 Pac. 323], that the order of distribution is conclusive of the rights of all parties, assignees as well as heirs, and whether they appear or not; and it is held that all persons claiming ownership, whether directly or through the heirs, may have their respective rights conclusively ascertained, if not adverse to the estate. (*In re Burton,* 93 Cal. 459, [29 Pac. 36].)

An administrator is chargeable in his account with the whole of the estate of the decedent coming into his possession at the value of the appraisement contained in the inventory. (Code Civ. Proc., sec. 1613.) He is not accountable for any debts due to the decedent ''if it appears that they remain uncollected without his fault.'' (Id., sec. 1615.) But if it does not so appear to the court, the administrator must be held answerable for the amount of a debt due the decedent as appraised in the inventory. (*In re Sanderson,* 74 Cal. 199, 203, [15 Pac. 753].) Merely charging himself with the note and crediting himself with it is not a statement that it remained uncollected ''without fault'' on the part of the administrator. (Id.) It was also held in that case that there is no presumption of duty performed. The presumption is that the administrator could have collected the note, in the absence of satisfactory showing that it was not collected

without any fault in him. The only excuse tendered in the case here is that he would have had to sacrifice his private business in paying the note. But his primary duty was to the trust he had assumed. He was not authorized to show favor to himself as a debtor to the estate greater than to any other person. He had no right to use the credit of the estate to promote his personal gain or to maintain a business which might suffer if he drew out of his capital enough to pay what he owed the estate. In *Estate of Walker,* 125 Cal. 242, [57 Pac. 991], the administrator admitted that he "should be charged with a debt due from him to the estate as money on hand," but that on the settlement of his final account, he might show "that he has never at any time while administrator had the means to enable him to pay the debt or any part thereof." In reply the court said: "Further than this, unquestionably, the contention could not logically go, since, as he cannot sue himself, and yet it is his duty to collect the debt for the estate, he must be held officially liable for any money he could have so applied at any time during his official term. If he has not so applied it he has not faithfully executed his trust according to law, and his sureties may also be held; for it is so nominated in the bond." Then follows a very instructive discussion of principles which should control both as to the consequences to the administrator and his bondsmen where in fact he was insolvent and unable to pay anything at the death of decedent or at any time during his incumbency as administrator. It was held that in such a case "the fiction of the law" by which he became chargeable with his debt as money in hand, should not be made to work injustice. *In fictione juris semper acquitas existit.* In the course of the discussion Judge Temple said: "I am not disposed to deny that, so far as the administrator has the means to pay, he and his sureties may be charged with the money as in the hands of the administrator." In *Sanchez* v. *Forster,* 133 Cal. 614, [65 Pac. 1077], the court held that the rule laid down in section 1447, Code of Civil Procedure, as to the restrictions placed upon executors, is not applicable to administrators. The action was against the sureties of an administrator. The court said: "The liability of these defendants for the debt of the administrator depends upon the fact as to whether or not the debt was uncollected through

his fault. Or, bringing the question directly to the door of the administrator, it may be said his sureties are liable, if, during his administration of the estate, he had the financial ability to pay the debt and failed to do so." (See *Estate of Thomas,* 140 Cal. 397, [73 Pac. 1059].)

It seems to us that the learned trial judge was fully justified in charging the administrator with the debt due the estate which he had the means to pay but did not pay. As he is concededly insolvent, it suggests the inquiry why he should concern himself about the decree of the court as it fixes no additional liability upon him. The answer may be found in the fact that the administrator gave a bond in a large sum and that his sureties may have had something to do in promoting the appeal.

If we understand appellant, he claims that he should be charged with the notes and should have the charge balanced by a credit on the other side of the account for the notes as uncollected. Should the account be settled as thus stated it might be urged by the surety company that the administrator was purged of any dereliction of duty, and they thus be discharged of liability for any breach of his trust. Even though there are not creditors of the estate, the heirs are entitled to have brought into it for distribution all that legally and rightfully belongs to it, and if the sureties are liable, the estate may look to them to make good the delinquency of the administrator. There is no evidence in the record that there are no creditors of the estate. There is a statement in the final account that the only debt "which has been presented and duly allowed during the period embraced in the foregoing account" is as follows: "Tonjes Doscher, Prom. note $900.00."

Whether notice to creditors has been published does not appear, nor do we find that this note has been paid. There are credits in the final account for interest paid and in the supplemental account two payments of $25 each and one of $50, but the note is not paid. Whether there are other creditors does not appear, nor does it appear that there were no others or that the time for filing claims is passed. It is probable that there are no other debts, as the court otherwise would not have settled the final account. Whatever the fact may be, it would not affect materially the point under discussion.

It is next claimed "that the administrator should not have been charged with moneys in the amount due on his two promissory notes to the decedent, but should have been credited with the amount due on them, as an advance to the sole distributee of the estate," the Loheide Estate Company. This because he delivered a substitute for the old notes to the estate company, "which accepted such substitute." *Estate of Moore,* 96 Cal. 522, [31 Pac. 584], is cited to the proposition that a distributee or legatee who has received his distributive share or legacy cannot be heard to object to a credit therefor in the settlement of the administrator's account. (Citing, also, 2 Woerner on Administrators, p. 1153.) We know nothing of the facts attending the making of this new note except as we learn them from the testimony of the administrator already quoted. He was secretary and manager of the company. The new note was probably made to the estate company because the heirs had all joined in a conveyance of their interests in the estate to the corporation, and it was naturally enough made the payee of this new note which was not given as an advancement, but, as appellant testified, because the old notes "were about to outlaw." There is nothing in the record tending to show that the heirs or stockholders of the corporation received this note as an advance paid them on their distributive shares. Furthermore, it has been held by the supreme court that, while an executor is entitled to be reimbursed for payments made under the terms of the will and for distributive shares which he may have turned over, "credits therefor are not to be given upon the settlement of accounts, but are to be retired therefrom and considered upon the distribution of the estate." (*Estate of Willey,* 140 Cal. 238, 242, [73 Pac. 998].) We see no reason why the rule is not applicable to the account of administrators. What has been said will apply to all the items of advancements made to heirs by the administrator.

Some criticism is made of the order in that by it the exceptions and objections of MacKinnon were disallowed and the exceptions of the estate company allowed, whereas the latter made no reference in its objections to the notes in question. Suffice it to say it was the duty of the court to satisfy itself of the correctness of the account (*Estate of Moore,* 121 Cal. 635, 639, [54 Pac. 148]); and if it found

the administrator justly chargeable with money, it would be the duty of the court to charge him with it whether or not called to the court's attention in the exceptions taken. Why the court charged the administrator as it did and at the same time disallowed MacKinnon's objections, among which was a demand that this charge be made, is not apparent. MacKinnon's objections ran to a large number of items, many of which the court disregarded. It may have been an inadvertence and the court may have intended its order to apply more particularly to these miscellaneous items. However this may be, the action of the court is not sufficient ground for reversal.

The order settling the final and supplemental accounts is affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 12, 1912.