[Sac. No. 1567. In Bank.—February 14, 1908.]

In the Matter of the Estate of H. J. GLENN, Deceased. ALICE A. YOUNG, Appellant.

ESTATES OF DECEASED PERSONS—RIGHT TO DISTRIBUTION AT STATUTORY TIME.—Ordinarily a legatee, devisee, or heir is entitled as a matter of right to receive his share of the estate at the time fixed by statute, if the same can be given to him without loss to creditors, regardless of the fact that it might be better for all interested in the estate that the property should be held in administration for a longer period.

ID.—ESTOPPEL TO INSIST ON RIGHT.—A party entitled to receive a distributive share of the estate can estop himself from insisting upon the right to receive it at the time fixed by the statute where the effect thereof would be to injure the other heirs who had acted upon the faith of such party's undertaking and promises.

ID.—PARTIAL DISTRIBUTION—RIGHT TO DETERMINE BY EQUITABLE CONSIDERATIONS.—The superior court, in the exercise of its probate jurisdiction, proceeds upon principles of equity, and may refuse an application for partial distribution where the circumstances of the case show that the claimant, under settled equitable principles, should not be heard to assert the right to immediate possession of the property. In the present case, by reason of the voluntary agreements entered into between the heirs and the financial condition of the estate resulting from the carrying out of such agreements, the application for a partial distribution was rightly refused.

APPEAL from an order of the Superior Court of Colusa County refusing an application for the partial distribution of the estate of a deceased person. H. M. Albery, Judge.

The facts are stated in the opinion of the court.

Burrell G. White, for Appellant.

F. C. Lusk, for Respondents.

ANGELLOTTI, J.—This is an appeal from an order deny-
ing an application for partial distribution of appellant's
share of the estate of deceased.

The petitioner is the surviving wife of A. G. Glenn, one of
the children of deceased, who was entitled to an undivided
one twelfth of the estate of his father. He died shortly after
the death of his father, leaving a will by which he gave his
interest in his father's estate to appellant for her life, the
same to go upon her death to the grandchildren of his deceased
father. Appellant seeks to have distributed to her this life
estate in an undivided one-twelfth part of the property of
the estate remaining on hand.

Deceased died intestate February 17, 1883, leaving a large
estate consisting almost wholly of real property, and being
very heavily indebted. It was concluded by the heirs that
better results could be obtained by keeping the property in
one body, without selling or distributing the same until by
aid of the proceeds of the cultivation of the land, which was
farming property, the indebtedness could be paid. At the
request of the heirs Mr. N. D. Rideout assumed the duties of
administrator with this understanding, and a written agree-
ment was entered into by him and all of the heirs, including
appellant's husband, indemnifying him against any claim on
their part arising from such management by him of the prop-
erty of the estate. It being necessary that the heirs should
have money with which to maintain themselves pending ad-
ministration, in 1888 another agreement was executed by
appellant, whose husband had in the mean time died, both
individually and as executrix of her husband's will, and by
the other heirs, indemnifying the administrator against any
claim arising by reason of advances made to them or either
of them from the property of the estate. Under these agree-
ments the property was farmed under the management of
the administrator for many years, with the result that the
indebtedness was very largely reduced. At the time of the

filing of this petition for partial distribution, September 7, 1906, $495,217 had been paid to the heirs, of which last-named sum $42,807 was paid to appellant's husband, and to her individually and as executrix of her husband's will, appellant receiving seventeen hundred dollars as late as March, 1906. Farming having become unproductive, it was concluded to sell sufficient land to pay the remaining debts and an order of sale was obtained. Some land was sold, but the administrator had not been able at the time of the hearing of this petition to sell enough to pay the debts of the estate. At the time of such hearing the assets of the estate consisted of real estate appraised at $510,311, money due on real estate sold, $5,000, and grain valued at $7,000, and there was due creditors of deceased $54,640, due for administrator's commissions according to minimum estimate $50,000, and due for taxes $11,-000, a total of $115,640. It sufficiently appeared that every reasonable effort was being made to sell enough land to pay the debts, and the indications were that sufficient could be sold to discharge the indebtedness within a year.

The first demand on the part of appellant that advances to the heirs cease and that the estate be closed was made in August, 1905. The granting of the petition for partial distribution was opposed by the administrator and all of the heirs other than appellant.

It is apparent that the granting of the petition would have been exceedingly injurious to the heirs, and would have postponed the payment of the claims of the creditors of the estate. Contemplated sales of land absolutely necessary to the payment of debts and the closing of the estate would probably have been prevented, and certainly very much delayed, and unless a partition was had, which, in the ordinary course of things, would have involved large expense and delay, the inability of the estate to convey to purchasers an absolute title including all interests would naturally have caused the remaining undivided interests to be sold at great loss. The record amply justified the conclusion of the learned trial judge that it was not then for the best interests of the estate and those interested in it that this undivided interest should be distributed to appellant. Appellant, however, insists that this is an immaterial consideration upon an application for partial distribution, the statute providing that if at the hearing "it

appear that the estate is but little indebted, and that the share of the party applying may be allowed to him without loss to the creditors of the estate, the court must make an order in conformity with the prayer of the petition." Her position is that the facts stated show as a matter of law that the estate was "but little indebted" (*Estate of Crocker,* 105 Cal. 372, [38 Pac. 954]), and that the distribution asked might have been made without loss to the creditors, and that consequently the lower court was required by the terms of the statute to grant the application, however injuriously the other heirs might have been affected thereby. Assuming purely for purposes of argument that the facts showed the estate to be "but little indebted" within the meaning of the statute, and that no loss to creditors would have resulted from the granting of the application, we do not think that the result contended for by appellant follows. Ordinarily it is, of course, true that a legatee or devisee or an heir is entitled as a matter of right to receive his share of the estate at the time fixed by the statute, if the same can be given to him without loss to creditors, regardless of the fact that it might be better for all interested in the estate that the property should be held in administration for a longer period. It is his property, and he has the right to enjoy the same at the earliest possible moment consistent with the proper administration of the estate. That he shall be able to have such enjoyment is the object of our statutes relative to partial distribution. But we have no doubt that a party can estop himself from insisting upon the exercise of this right where the effect thereof would be to injure the other heirs who had acted upon the faith of such party's undertaking and promises. It is well settled that the superior court, in the exercise of its probate jurisdiction, proceeds upon principles of equity (see, *In re Moore,* 96 Cal. 528, [31 Pac. 584]), and we see no reason why it may not deny an application for partial distribution where the circumstances of the case show that the claimant, under well-settled equitable principles, should not be heard to assert the right to immediate possession of the property. In the case before us the circumstances which would render the granting of appellant's application injurious to all the other heirs are the result of the agreements freely entered into by appellant and her husband, under which they have already received by

way of advancement $42,807. If it had not been for these agreements, the estate would long ago have been closed, and appellant would have received her share thereof. By reason thereof, those interested in the estate find themselves in a position where it is necessary to sell a large portion of the realty in order to pay the debts and close the estate. Appellant chose that moment to insist upon the right of immediate delivery of her undivided share thereof, notwithstanding that the enforcement thereof will result in injury to all the other heirs. We think that the court below was warranted in holding that she could not insist upon this right to the injury of the other heirs, while those managing the estate were making every reasonable effort to close the administration, and there was a reasonable probability that if the estate was kept intact, sufficient property could be sold within a very short time to pay all the debts and expenses of administration, and thus enable final distribution to be made.

In view of what we have said, it is apparent that certain evidence objected to by appellant was relevant and was properly admitted.

The order is affirmed.

Shaw, J., McFarland, J., Henshaw, J., Lorigan, J., and Sloss, J., concurred.