[L. A. No. 24314. In Bank. Dec. 17, 1957.]

Estate of JESSIE LEE TOLER, Deceased. EDWARD J. GUIRADO, as Executor, etc., Appellant, v. SUSAN E. PONDER, as Guardian, etc., Respondent.

461

Harold B. Newrock for Appellant.

Clyde C. Shoemaker for Respondent.

SPENCE, J.—The executor of the estate of Minnie L. Carter, deceased, devisee and legatee under the will of Jessie Lee Toler, deceased, appeals from an order for preliminary distribution of the estate of Jessie Lee Toler made in response to a petition therefor by Susan E. Ponder, guardian of Benjamin Edward Toler, an incompetent person, in his behalf. Benjamin is Jessie's brother and a devisee and legatee under her will.

Jessie Toler died on September 26, 1946. Her will was admitted to probate on October 18, 1946, and the Bank of America National Trust and Savings Association was appointed executor of her estate. Paragraph "FIRST" of decedent's will directed the executor to pay the expenses of her last illness, her funeral charges, debts and inheritance and estate taxes "as soon as it shall have sufficient funds in its hands therefor, . . ." Paragraph "FOURTH" made two specific bequests of $5,000 each. Paragraph "FIFTH" gave, devised, and bequeathed the "rest and residue" of decedent's estate to Benjamin Toler "for and during his natural life, with the right to the full use and benefit of all of the rents, issues and profits therefrom with the remainder over in fee to . . . [named persons, including Minnie Carter, the original appellant herein, in various amounts]." Paragraph "EIGHTH" authorized the executor to lease, encumber, and sell property of the estate and to manage and operate any property and, subject to court approval, any business belonging to the estate.

Jessie's estate was appraised as of the date of her death at $186,657.11, the chief asset being a citrus ranch valued at $130,000. Notice to creditors was published, and claims filed during the next six months, totaling $2,566.20, were paid.

The executor operated the ranch until August, 1954, when it was sold. The estate received a net return from the sale of approximately $290,000.

On December 19, 1955, Benjamin Toler's guardian filed a petition in his behalf, pursuant to section 1000 of the Probate Code, requesting a preliminary distribution of $200,000 from the estate. The petition set forth the pertinent parts of decedent's will, described Benjamin Toler's interest as that of "devisee and owner of a life estate in the entire remainder of said estate as provided by paragraph FIFTH of said will . . .," and prayed for distribution of $200,000 "on account of the share of said estate to which said Benjamin Edward Toler is entitled as above described, . . ."

Objections were filed by Minnie Carter, a hearing was held, and on February 6, 1956, the court entered its minute order granting the petition and ordering the executor "to distribute to Benjamin Edward Toler, as life tenant, possession of the sum of $200,000.00 on condition funds be deposited in a trust company as custodian. The expenditure and investment of said funds to be through guardianship proceedings by the guardian of Benjamin Edward Toler."

On February 20, 1956, the court made its written order for preliminary distribution, from which this appeal was taken. The court found therein that all the allegations of the petition were true; that all claims filed against the estate had been paid; that all inheritance taxes, federal estate taxes, personal income taxes, and personal property taxes had been paid; and that the estate was but little indebted. It was determined that decedent had made two specific bequests of $5,000 each and that they had been paid; and that as of December 15, 1955, the executor had in its possession assets of the estate aggregating $308,934.69, of which $307,013.37 was cash.

The order likewise recited the finding that decedent had "devised and bequeathed the entire rest arid residue of her estate, real, personal and mixed to her brother, said Benjamin Edward Toler, for and during his natural life, with the right to the full use and benefit of all of the rents, issues and profits therefrom, with the remainder over in fee to the persons and in the amounts as . . . [described in the will]." It was further found that Benjamin Toler was entitled to prelimi-

nary distribution "of such portion of his legacy, devise or share of said estate under said last will of said decedent . . ." as was safe and proper; and that $200,000 cash could be safely and properly distributed to Benjamin Toler "as devisee and legatee" under decedent's last will without loss to creditors or injury to the estate or anyone interested therein.

The distributive portion of the order followed:

"IT IS THEREFORE ORDERED by the Court that property of said estate consisting of the sum of $200,000.00, in cash, lawful money of the United States, be and the same is hereby distributed to said Susan E. Ponder, as guardian of the person and estate of said Benjamin Edward Toler, an incompetent person, on condition that said sum of $200,000.00 be deposited in a trust company, as depositary or custodian, pursuant to and in compliance with the provisions of section 1514 of the Probate Code, in connection with the reduction of the bond of said guardian, in the matter of the estate and guardianship of Benjamin Edward Toler, an incompetent person, case No. 371353, pending in the Superior Court of the State of California, in and for the County of Los Angeles.

"IT IS FURTHER ORDERED that the Bank of America National Trust and Savings Association, a national banking association, as executor of the last will and testament of said Jessie Lee Toler, deceased, shall and it is hereby directed to deliver the possession of said sum of $200,000.00 to said Susan E. Ponder, as guardian of the person and estate of said Benjamin Edward Toler, on condition that said funds be deposited in a trust company as above provided; and that said executor is hereby authorized and directed to deliver said sum of $200,000.00 to such trust company as may be appointed as depositary or custodian of said sum of $200,000.00 in the matter of said guardianship, said appointment to be evidenced by a certified copy of the order directing the deposit of said funds with such trust company, and the receipt of such depositary or custodian shall be a valid discharge and acquittance for said sum of $200,000.00 so delivered.

"IT IS FURTHER ORDERED by the Court that the expenditure and investment of said funds on deposit with said depositary or custodian shall be made by and through proceedings in the matter of said guardianship by said Susan E. Ponder, as the guardian of the person and estate of said Benjamin Edward Toler, an incompetent person, subject to the order and direction of the court in which said guardianship proceedings are pending.

"It Is Further Ordered that the giving of any bond by the petitioner herein be dispensed with and that said preliminary distribution is ordered without bond."

Appellant contends that the above written order erroneously distributed in Benjamin Toler's behalf the entire interest in the $200,000 rather than the life estate therein to which he was entitled under decedent's will. For reasons hereinafter stated, we do not so interpret the order.

Benjamin Toler's guardian did not seek in the petition for preliminary distribution more than a life interest in the amount distributed, nor does she now contend that Benjamin Toler was entitled to or received a greater interest therein. Her petition alleged that under decedent's will Benjamin became the owner of a "life estate in the entire remainder" of decedent's estate and prayed for distribution of $200,000 "on account of the share of said estate" as so described. The court below, in response thereto, entered its minute order of February 6, 1956, in which it granted the petition and ordered the executor of decedent's estate to distribute $200,000 to Benjamin Toler "as life tenant."

The court's written order subsequently made, which is the subject of the controversy here, recited the court's findings that Benjamin had been bequeathed the rest and residue of decedent's estate *"for and during his natural life"*; that he was "entitled to preliminary distribution of *such portion of his legacy, devise or share of said estate under said last will* of said decedent" as the court might designate as safe and proper; and that there could be safely distributed to him $200,000 *"as devisee and legatee under the last will of said decedent."* (Emphasis added.)

It is true, as contended by appellant, that the distributive provisions of the written order did not explicitly set forth, as they might have, the nature of the interest passed in the $200,000. However, a reading of the written order in its entirety, including the recitals therein just above quoted, clearly shows that the court thereby distributed only a life interest in the $200,000 in accordance with its intent as previously expressed in its minute order of February 6, 1956. It is apparent from the above-quoted findings and conclusions that the court below intended to distribute an interest in the $200,000 which was identical in nature with that which Benjamin Toler was to receive under the terms of decedent's will in the "rest and residue" of her estate.

Appellant asserts that certain of the incidents of

ownership distributed by the written order substantiate his contention that a fee interest in the $200,000 was passed thereby. He refers to the provision in the order authorizing the "expenditure and investment" by Benjamin's guardian, subject to the order and direction of the court in the guardianship proceeding, of the $200,000 which was to be placed on deposit.

It does not appear that the conduct authorized on the part of the guardian was inconsistent with the distribution of a life estate or that it can be implied therefrom that the court intended to distribute the entire interest in the $200,000. Benjamin Toler, as life tenant, or his guardian in his behalf, was entitled to the use, possession and enjoyment of the property distributed, subject to the restriction that as "implied trustee" thereof, neither could do anything which would injure the remaindermen or which would prevent the remaindermen from receiving the original corpus thereof or property substituted therefor, including all capital gains. (See *Bliss* v. *Security-First Nat. Bank,* 81 Cal.App.2d 50, 55 [183 P.2d 312]; see also *Hardy* v. *Mayhew,* 158 Cal. 95 [110 P. 113, 139 Am.St.Rep. 73]; 31 Cal.Jur.2d § 44, pp. 389-390; 31 C.J.S. § 34, pp. 42-43; Civ. Code, § 818.) The guardian, with court approval, was entitled to invest and manage the $200,000 and use the income therefrom in Benjamin Toler's behalf.

Properly construed, the order did not vest in the guardian the entire interest in the $200,000 nor did it suggest that the corpus thereof, could be used in Benjamin Toler's behalf. Possibly the court could have selected a better term than "expenditure" to describe the guardian's powers with respect to the $200,000 to be placed on deposit with a trust company, as that term often connotes the "using up" or "consumption" of property. However, in its broader sense an "expenditure" is any "laying out" or "disbursement" of money. (See Webster's New International Dictionary, 2d ed.) Read in its context, that term can reasonably be construed to have meant the use of the $200,000 for the purchase of real estate or securities, or for other investment purposes. Likewise, it is not unreasonable to assume that the court's use of the term "expenditure" had reference to the use of such income as might arise from the $200,000 while on deposit, or later, which the guardian would be entitled to apply to the support of Benjamin Toler. It is clear from the previously quoted minute order of February 6, 1956, that the court below did not recognize any

inconsistency between its authorization of the guardian's "expenditure and investment" of the $200,000 and its distribution of a life estate therein. And, in light of the above construction of that portion of the order, it appears that the court below was correct. If any implication from the guardian's authorization to make "expenditures" of the property distributed could be drawn to the effect that the corpus thereof could be invaded to the injury of the remaindermen, it was clearly overcome by other language in the order, previously referred to, which shows that the order distributed only a life estate in the $200,000.

 Appellant contends that the order was erroneous in that it failed to name the remaindermen and direct that upon Benjamin Toler's death, they should receive the property distributed in the respective amounts as provided by the will.

It does not appear that a statement so providing was essential to the order or that its omission therefrom constituted error. Benjamin Toler's guardian was entitled to apply for, and she sought, the preliminary distribution of a life estate in the $200,000. (See *Estate of Baldwin,* 21 Cal.2d 586, 592 [134 P.2d 259].) The court, in passing upon the petition, was concerned only with the distribution of that interest and its order was final, binding and conclusive only to that extent. (See *Estate of Van Deusen,* 30 Cal.2d 285, 290 [182 P.2d 565]; *Estate of Kearns,* 129 Cal.App.2d 832, 839 [278 P.2d 85]; 11B Cal.Jur. § 1255, pp. 738-739; Prob. Code, § 1003.) Therefore, while the nature of the remaindermen's rights in the property distributed might have been more explicitly set forth, the order's failure to do so did not jeopardize their interests or amount to an adverse determination with respect to their ownership of the remainder.

 It is the established policy of this state, implemented by sections 1000 and 1001 of the Probate Code, to encourage the distribution of property to legatees as soon as can be done without jeopardizing the rights of others interested in the estate. (*Estate of Morelli,* 102 Cal.App.2d 39, 42 [226 P.2d 716]; see also *Estate of Glenn,* 153 Cal. 77, 80 [94 P. 230].) It is apparent that this policy is particularly forceful when, as here, the interest sought to be distributed is one of limited duration. In refraining from naming the remaindermen and setting forth their interests, the court below may well have fostered this policy by the avoidance of determinations unnecessary to the distribution of the life estate which could have delayed the issuance of the order. Although a

general statement in the order to the effect that the property distributed would pass to the remaindermen thereof at the death of the life tenant might have been made without involving additional determinations or delay, it could only have served to describe what was already obvious. It cannot be said that the court below omitted a provision essential to the order or that it acted unwisely in delaying, until final distribution or otherwise, the specification of the remaindermen and the description of their respective interests.

■ Appellant asserts that the order in question should have provided that all income derived during administration should be first applied to the payment of costs of administration and the other expenses set forth in paragraph "FIRST" of decedent's will. He bases this assertion primarily upon language contained in that paragraph directing the executor to pay the enumerated expenses therein "as soon as it shall have sufficient funds in its hands therefor, . . ." He construes this language as indicative of decedent's intent that no bequests were to be paid until those obligations were discharged.

Appellant apparently seeks the inclusion of such a provision in the order because he believes that the distribution of the $200,000 deprived the estate of probate income which, under his interpretation of the will, should have been the primary source for the payment of any remaining obligations. Assuming the correctness of his assertions with respect to the meaning and effect of paragraph "FIRST" of decedent's will, about which there is considerable doubt, his position is nevertheless untenable.

The court below in granting the petition for preliminary distribution determined that the $200,000 could be distributed without loss to creditors of the estate, or injury to the estate or any person interested herein. (See Prob. Code, § 1001.) Implicit therein was its further determination that there would remain in the estate after such distribution, sufficient assets of the type designated by decedent in her will or, in the absence of such designation, according to statutory preference (see Prob. Code, § 750) for the payment of any of the estate's remaining obligations. ■ In the absence of a clear showing that the probate court abused its broad discretion in concluding that the estate was in such condition that the preliminary distribution could be safely made, its determination in that regard may not be reversed on appeal. (See *Estate of Fields*, 94 Cal.App.2d 233, 238 [210 P.2d 247]; 21 Cal.Jur.2d § 800, pp. 203-204.) Appellant has

failed to make any showing that there was insufficient probate income remaining in the approximately $107,000 left in the estate after distribution to defray any remaining costs and expenses. As previously noted, the law favors the earliest possible distribution of estates so that legatees and devisees can enjoy their inheritance to the fullest extent at the earliest possible time. Were we to require that the order in question be conditioned as appellant requests, or that its issuance be delayed until the time that a final determination of the estate's remaining costs and expenses could be made and those obligations paid, that policy would be clearly frustrated.

 Appellant has called our attention to the fact that the court below, in issuing the order, failed to make any allocation between that portion of the $200,000 which constituted corpus of the "rest and residue" of decedent's estate and that portion thereof, if any, which was attributable to probate income. We are unable to see why such an allocation was essential to the preliminary distribution or how the court's failure to allocate jeopardized appellant's position.

The previously quoted findings and conclusions in the order strongly suggest that the court below considered the $200,000 as part of the corpus of decedent's estate. Accordingly, a life interest only was distributed therein in conformance with the terms of decedent's will. An examination of the executor's accounts and the findings made below with respect to the estate's assets at the time of preliminary distribution indicates that the $200,000 was derived from the proceeds of the sale of the citrus ranch, thus substantiating the conclusion that it was attributable to the corpus of decedent's estate. But even if a portion of the amount distributed was probate income, it does not appear that an allocation was necessary.

 The order, as above interpreted, limited Benjamin Toler's interest in the $200,000 to a life estate. Therefore, any question which might have otherwise arisen with respect to what portion thereof constituted probate income, and the nature and extent of Benjamin Toler's interest therein over and above his distributed life estate (see Prob. Code, § 160; *Estate of Platt,* 21 Cal.2d 343, 347-348 [131 P.2d 825]), was thereby forestalled. Further, as heretofore noted, the court below necessarily determined that there remained in the estate sufficient assets of the type designated by decedent, or prescribed by statute, to pay any remaining obligations. Thus, even if probate income was to be the primary source for the

payment of additional costs and expenses, as appellant contends, we cannot say an allocation was necessary in the absence of an affirmative showing by appellant that the court below abused its discretion in concluding that the $200,000 could be distributed without loss to the creditors or injury to the estate or anyone interested therein. (Prob. Code, § 1001; see *Estate of Fields, supra*, 94 Cal.App.2d 233, 238; 21 Cal.Jur.2d § 800, pp. 203-204.) It must be concluded that the suggested allocation was unnecessary at the time of preliminary distribution. It is probable that the court below, in order to facilitate the earliest possible distribution of the $200,000 to Benjamin Toler, delayed any allocation between corpus and income until the time for final distribution.

As above indicated, we have concluded that the written order for preliminary distribution passed only a life estate in the $200,000 in Benjamin Toler's behalf; that the provisions contained therein with respect to the "expenditure and investment" of that amount were not inconsistent with the distribution of that life interest; and that under the circumstances presented it was unnecessary for the order to name the remaindermen, describe their interests, or to allocate what portion, if any, of the amount distributed constituted probate income.

The order for preliminary distribution is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer. J., and McComb, J., concurred.